RICHTON TIE & TIMBER Co., et al. *v.* SMITH, et al.

Division A. Nov. 27, 1950.

No. 37677 (48 So. (2d) 618)

Roy N. Lee, C. C. Smith, and O. B. Triplett, Jr., for appellant.

150

**Nichols & Huff,** for appellees.

**Holmes, C.**

Appellees 'recovered a judgment against appellant, Richton Tie and Timber Company, for $6,500 for damages resulting from the alleged negligent operation of a Ford truck, driven at the time by one A. W. Turner, in company with one Charlie Johnson, and appellant appeals from said judgment.

At the time of the incidents involved in this appeal, appellant, the Richton Tie and Timber Company, was engaged in the business of buying pulpwood, and, among other places, maintained a yard at Forest, Mississippi. In the general course of its business, and for the purpose, as it claimed, of increasing its purchasing power, it made purported sale of trucks to various individuals under terms whereby the so-called purchaser became obligated to use the truck for no purpose other than to haul masonite wood and/or load cars for and on behalf of appellant, and for which appellant agreed to pay him the prevailing rates of compensation.

Appellees owned a concrete block building in Forest, which constituted their place of business, and wherein

they dealt in farm machinery, home electric appliances, and automobiles.

The record discloses the following: On December 13, 1948, appellant made a purported sale of a Ford truck to Charlie Johnson, delivering the truck to him, and taking his note therefor in the amount of $2,491.87, payable on demand, and secured by a deed of trust executed by the said Charlie Johnson to appellant, and duly recorded by appellant. The deed of trust contained the following pertinent provisions:

"It shall further become a part of this instrument that Grantor will:—

"(1) Haul masonite wood and/or load cars for and on behalf of beneficiary, for which he shall receive the prevailing rates of compensation, and will not use or operate said truck for other purposes without the specific consent of the beneficiary; (2) Maintain said truck in a state of good repair and running condition at all times at his own expense; (3) Carry full value fire & theft, and $100.00 deductible collision insurance, at his own expense on said truck; (4) Pay all taxes due or to become due on said truck.

"It is further specifically agreed and understood that the Richton Tie & Timber Company will in nowise be liable or responsible for any injuries or damages to any person or any property which may be incurred during the operation of said truck by said grantor or his representatives.

"For default in either of the said matters, conditions, and/or requirements of this instrument, the Trustee may make sale of said property and apply proceeds to payment of the indebtedness hereby secured, whether all thereof be then due or not, and the interest thereon to date of sale, and the cost of making sale."

On Sunday morning, January 9, 1949, between the hours of ten and eleven o'clock, Charlie Johnson and A. W. Turner, with Turner driving, were operating the said truck on Highway 80, traveling in the direction of Forest,

when, within about 2½ miles of Forest, they passed the witness, Howard McCrory, an ex-sheriff of the county, who was proceeding in his car in the same direction. This witness says, without dispute, that the truck passed him at a rate of speed of about 80 miles an hour, and was being recklessly operated, and that the occupants of the truck hollered at him as they passed. The truck proceeded into Forest, and later crashed into the building of appellees, knocking a gas tank in front of the building from its concrete foundation, and demolishing the front and other parts of the building, and damaging its contents, and, according to the undisputed evidence, resulting in damage to the appellees in the amount of $6,790. The occupants of the truck were injured, and were described by ex-sheriff McCrory, who saw them before their removal from the wreckage, as being bloody and half drunk.

The undisputed proof is that Charlie Johnson was in the habit of getting drunk and operating a truck on the public highways in such condition, and that he was a reckless, incompetent driver, and that he had a general reputation in the community as a reckless, incompetent driver, and for driving while intoxicated.

The trial judge submitted the case to the jury under instructions which authorized the jury to award the plaintiffs both actual and punitive damages if they believed from the preponderance of the evidence that appellant furnished the truck to Charlie Johnson when it knew or should have known that Johnson was a reckless and incompetent driver, because of his habits of drunkenness, and by reason thereof would use the truck to the injury and damage of others, and that plaintiffs were damaged as a result thereof.

The appellant complains that the trial court erred in denying its request for a peremptory instruction, and in refusing another requested instruction on behalf of appellant, and in overruling appellant's objection to claimed

prejudicial remarks made by counsel for the appellees in his argument to the jury.

On the issue of liability, it is the position of the appellant that it sold the truck to Johnson in good faith, and thereby relinquished all control over the same, and that Johnson was free to use it as he pleased, and to buy wood where and from whom he pleased, and on delivery of the wood to appellant he was to be paid therefor so much per unit. Such, however, are not the terms of the trust instrument which appellant required of Johnson on the delivery to him of the truck. Johnson was required by the terms of the agreement to use the truck only in hauling for appellant. The appellant, under the demand note and deed of trust, could have withdrawn the truck from Johnson's possession at any time or else have become wholly severed from relations with Johnson and the truck in the event Johnson paid the note in full. This it did not do, but retained its control over the truck under circumstances, as shown by the evidence, whereby it knew, or should have known, from Johnson's reputation, that he was a reckless and incompetent driver because of his habits of drunkenness.

In Slaughter v. Holsomback, 166 Miss. 643, 147 So. 318, 322, this Court said: "We unhesitatingly and unreservedly declare that a person who has the general reputation of being an habitual drunkard is an incompetent driver, and that one who knows, or should know, facts which lead to the belief that one is an habitual drunkard should know that such person is just as unsafe a driver as an imbecile or a baby. When an intoxicant is enthroned, reason is dethroned, physically and mentally." We further add unreservedly that the greatest menace to life and property on our public highways today is a truck or automobile operated by a drunken driver. Appellant supplied the truck to Johnson under circumstances whereby it knew, or should have known, from his reputation that he was reckless and incompetent because of his habits of drunkenness, and whereby

it retained such control over the truck as that it might have withdrawn the truck from Johnson's possession at any time. Under such circumstances, therefore, appellant will not be permitted to escape liability on the grounds that the relation of Johnson to appellant was that of an independent contractor, because even if he may be so called, he will, under the facts of this case, be termed the servant or employee of appellant, and the latter will be held liable accordingly. D. L. Fair Lumber Company v. Weems, 196 Miss. 201, 16 So. (2d) 770, 772.

The rule is laid down in Restatement of the Law of Torts, Section 260, as follows: "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows, or from facts known to him should know, to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of bodily harm to himself and others whom the supplier should expect to share in, or be in the vicinity of its use, is subject to liability for bodily harm caused thereby . . . ."

The decision in the case of D. L. Fair Lumber Company v. Weems, supra, is pertinent. In that case the lumber company became the owner of timber on lands which Weems was leasing for pasture purposes. The lumber company employed one Willis to cut and remove the timber thereon at an agreed price per thousand. In cutting the timber, the pasture fences of Weems were damaged, although Weems had cautioned both Willis and the lumber company not to cause damage to his fences by the cutting of the timber. It was the position of the lumber company in that case that Willis was an independent contractor, and that therefore no liability was imposed upon the lumber company. The Court said: "That the lumber company, having continued in its ownership of the timber, which was being cut and removed by Willis, whether as an independent contractor or as its agent, was under a duty to the landowners, by virtue of the rela-

tionship created by the timber deed, to see to it that, in the exercise of its rights as holder of the easement to cut and remove the timber, due and reasonable care should be taken not to unnecessarily injure the property of the landowners, is supported by both reason and authority''. Continuing, the Court said: ''Therefore, the timber owner may not commit the work of the removal of the timber to an independent contractor and thereby escape responsibility for negligent and unnecessary injury to the property of the landowner or his tenant; and as to such injury the so-called independent contractor will be deemed the servant or employe of the timber owner, and the latter will be liable to the landowner or his tenant for negligent unnecessary injuries to the same extent and as fully as had the damages been done by the timber owner himself.''

The fact that the truck at the time of the injury was being driven by Turner does not relieve the appellant of responsibility. Johnson and Turner were engaged together in the reckless operation of the truck and the acts of the one were the acts of the other. Slaughter v. Holsomback, supra. The antics of a drunken man are unpredictable, and it might reasonably have been anticipated that Johnson when intoxicated would engage with another equally intoxicated in the reckless operation of the truck.

We think the jury was warranted under the evidence in finding that appellant furnished the truck to Johnson when it knew or should have known that Johnson was a reckless, incompetent driver because of his habits of drunkenness, and would use the same to the injury of others, and that appellees were damaged as a direct and proximate result thereof. We conclude therefore that the trial court committed no error in refusing appellant's request for a peremptory instruction.

Appellant also complains that the trial court erred in refusing its request for the following instruction: ''The court instructs the jury that a sale of per-

sonal property is not required to be in writing in order to constitute a sale, and that it was not necessary that a bill of sale be executed by Richton Tie and Timber Company to Charlie Johnson in order to convey title to him.'' We think the refusal of this instruction was proper because it was too broad and calculated to confuse the jury. It is true that this Court held in the case of Equitable Credit Co. v. Cooper, 146 Miss. 868, 111 So. 749, that the failure of the seller of an automobile to execute a bill of sale to the purchaser, as required by Chapter 222, of the Laws of 1920, Section 8065, Mississippi Code of 1942, does not render the contract void. The complained of instruction, however, undertook to deal with personal property generally and to inform the jury that a sale of personal property is in no instance required to be in writing. Such is not the law. There are circumstances under our statute of frauds when a contract for the sale of personal property is deemed to be wholly void because not in writing. We are of opinion, therefore, that there was no error in the action of the trial court in refusing this instruction.

The appellant further complains that the trial court erred in refusing to grant a new trial upon the grounds of claimed prejudicial remarks by counsel for appellees in his argument to the jury. We deem it unecessary to set forth the remarks complained of for the reason that it is manifest that the jury was not prejudicially affected thereby. The actual damages proved by appellees amounted to $6,790, and notwithstanding the fact that the jury was authorized under the instructions to award both actual and punitive damages, the jury returned a verdict for $6,500. It is clear that the verdict of the jury was not the result of bias, passion, or prejudice.

We are accordingly of the opinion that the judgment of the court below should be, and it is hereby, affirmed.

Affirmed.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated the case is affirmed.

**Lee, J.**, took no part in the consideration or decision of this case.