LEE DECK, APPELLANT, V. RICHARD SHERLOCK ET AL., APPELLEES.

75 N. W. 2d 99

Filed February 24, 1956. No. 33857.

*Maupin & Dent, Harold W. Kay,* and *Richard W. Satterfield,* for appellant.

*Chambers, Holland & Groth, McGinley, Lane, Powers & McGinley,* and *Kirkpatrick & Dougherty,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action brought by Lee Deck to recover a judgment against Richard Sherlock, Robert F. Hull, and William Thomas for personal injuries and property damage resulting from an automobile accident. The trial court directed a verdict in favor of the defendant Sherlock. The jury found in favor of the defendant Thomas. The jury returned a substantial verdict against the defendant Hull. The plaintiff appeals from the judgments entered in favor of Sherlock and Thomas. No appeal was

taken by Hull and the judgment against him has become final, and therefore it is not involved in this appeal.

The plaintiff was a passenger in an automobile operated by his wife, Helen Deck. They were accompanied by the wife's mother and their two minor sons, Lee and Dennis. Plaintiff was a resident of Grand View, Missouri, and was at the time of the accident making a trip to Sheridan, Wyoming. The accident happened about 2 miles north of Ogallala, Nebraska, at the junction of U. S. Highway No. 26 and State Highway No. 61. The collision was between plaintiff's automobile and a car driven by the defendant Hull who was its only occupant. The details of the accident are important only as they incidentally bear upon the issues presented by this appeal in view of the fact that no appeal was taken from the verdict and judgment against Hull.

The defendant Sherlock was the owner of the car driven by Hull, and the defendant Thomas was the owner and operator of a third car which was following the car driven by Hull under the circumstances hereinafter to be related. The evidence is clear that at the time of the accident Hull was under the influence of intoxicating liquor. In fact, Hull admits that he was intoxicated.

The evidence pertinent to this appeal is substantially as follows: On April 22, 1953, Sherlock and Hull were driving around in Ogallala, Sherlock doing all the driving. They were engaged in drinking beer during the afternoon, the evidence being that they drank in excess of six cans of beer during that period. In the early evening they picked up one Harold Duffy and evidently more beer was consumed. The three of them continued to drive around town until about 9:30 p. m., when Sherlock, a disabled veteran, announced that his leg was hurting him and that he desired to go home. At this time Duffy was driving the car, Hull sat in the middle, and Sherlock was on the right. They drove to Sherlock's home and let him out. Sherlock testified that none of

the three was intoxicated at that time. Duffy was not present at the trial and gave no evidence by deposition or otherwise.

Hull testified that when Sherlock got out of the car, Sherlock said: "You can use the car * * * Bring it back." Sherlock testified that he told Duffy he could drive the car down to the Vets Club to get Thomas to pick them up. Sherlock said he did not tell Hull that he could drive the car and that he knew that Hull's license to drive had been revoked for driving while under the influence of intoxicating liquor. Sherlock stated that Hull had not driven the car up to that time and that his conversation relating to the use of the car was directed to Duffy and not to Hull. Hull said that he had not driven the car prior to the time that Sherlock left the automobile. He stated also that Sherlock never gave him any permission to drive the car. After Sherlock got out of the car at his home, Duffy drove it around town for about an hour and then parked it in front of the Vets Club.

Duffy and Hull entered the Vets Club, where they joined Thomas and one Supanchick in drinking alcoholic beverages. They continued to drink until Hull was refused further drinks by the management. During this drinking a discussion arose concerning the relative speeds of Fords and Mercurys. There is some evidence that when the four of them left the Vets Club one of them stated they intended to race the Sherlock Ford and the Thomas Mercury. Thomas and Hull stated that there was considerable discussion of the relative speeds of the two cars, but that it was all talk and that it was never their intention to enter into a race. It is evident from the record that the four were intending to drive out to the junction, where the accident happened, to talk and then proceed to the Thomas home several miles beyond the junction of the two roads. Hull got into the Sherlock car and proceeded north. The other three got in the Thomas car and followed. Thomas said

they were a considerable distance behind the car driven by Hull, that they saw its taillights from time to time, and that they never attempted to pass or even catch up with it. Thomas testified that he came upon the accident shortly after it happened, that he let Duffy out to flag traffic and otherwise assist, and that he and Supanchick went immediately to Ogallala to get an ambulance and to notify the safety patrol.

The plaintiff and his wife testified that as they looked south just prior to the collision it seemed that there were two sets of headlights approaching from the south. Mrs. Deck testified that one set of headlights appeared to be following the first. There is evidence in the record that a third car was parked 6 or 8 feet from the Deck car shortly after the accident. The testimony also shows that some person, unknown to any of the witnesses, assisted in removing Mrs. Deck's mother and Lee Deck, Jr., from the car. It is shown that this same person covered them with blankets, some of which belonged to the defendant Thomas.

The record further shows that State Patrolman Eugene Morrissey arrived at the scene of the accident about 1:10 a. m. The Thomas car was there in addition to the two cars involved in the accident. He testified that Hull and Duffy were very drunk, and that Thomas had been drinking and was very excited.

It is the contention of the appellant that the evidence shows that Sherlock was negligent in entrusting his automobile to Duffy and Hull under the circumstances shown, and that the trial court erred in directing a verdict in favor of Sherlock. Neither the law of master and servant, nor the law of principal and agent, is applicable to the instant case. Walker v. Klopp, 99 Neb. 794, 157 N. W. 962, L. R. A. 1916E 1292. The controlling rule is as follows: The law requires that an owner use care in allowing others to assume control over and operate his automobile, and holds him liable if he entrusts it to, and permits it to be operated by, a person

whom he knows or should know to be an inexperienced, incompetent, or reckless driver, to be intoxicated or addicted to intoxication, or otherwise incapable of properly operating an automobile without endangering others. Williamson v. Eclipse Motor Lines, Inc., 145 Ohio St. 467, 62 N. E. 2d 339, 168 A. L. R. 1356. A motor vehicle is not an inherently dangerous instrumentality and the owner is not generally liable for its negligent use by another to whom it is entrusted to be used. Liability may arise, however, if the owner permits operation of his motor vehicle by one whom he knows or should have known to be so incompetent, inexperienced, or reckless as to render the vehicle a dangerous instrumentality when operated by such person. In order to establish such a liability on the part of an owner it must be shown that he had knowledge of the driver's incompetency, inexperience, or recklessness as an operator of a motor vehicle, or that in the exercise of ordinary care he should have known thereof from facts and circumstances with which he was acquainted. Williamson v. Eclipse Motor Lines, Inc., *supra*. See, also, Annotation, 168 A. L. R. 1364.

The question is, therefore, whether or not Sherlock exercised due care when he entrusted his automobile to Hull and Duffy under the circumstances disclosed by the record. The evidence shows that Sherlock, accompanied by Hull, drove his car around Ogallala most of the afternoon of April 22, 1953. They were engaged in drinking beer while so doing. The evidence shows that they drank at least six cans of beer, and possibly more. They were joined by Duffy in the early evening and all three continued to drink beer. Sherlock testified that none of them was intoxicated when he was let out at his home about 9:30 p. m. Nevertheless, Sherlock knew that both Hull and Duffy had been drinking and that they were going to the Vets Club, where intoxicating liquors were sold, to find the defendant Thomas. Sherlock knew that the driver's license of Hull had been re-

voked for driving while in an intoxicated condition. It is true that Hull had not driven the car and that Sherlock did not give him express permission to drive it, nor did Sherlock direct Hull not to drive the car. The evidence shows that Duffy had been drinking a considerable amount of beer when Sherlock told him he could drive the car to the Vets Club to get Thomas to come and pick them up when he brought the Sherlock car back. Sherlock had known Hull and Duffy for 2 or 3 years. He knew they both were addicted to drink. It seems clear to us that an issue of fact was presented which was for a jury to determine. The tendency of those who engage in drinking to continue to do so and to seek others to join them in their conviviality is well known. A jury might well find that Sherlock was negligent in entrusting his car to Duffy or Hull, or both, in the light of the knowledge he had acquired throughout the afternoon and evening, even though he did not think Hull or Duffy were intoxicated when he permitted them to take the car. Murray v. Pasotex Pipe Line Co., 161 F. 2d 5; F. B. Walker & Sons, Inc. v. Rose, — Miss. —, 78 So. 2d 592; Slaughter v. Holsomback, 166 Miss. 643, 147 So. 318; Pfaehler v. Ten Cent Taxi Co., 198 S. C. 476, 18 S. E. 2d 331; 60 C. J. S., Motor Vehicles, § 431, p. 1062; 2 Berry, Automobiles (6th ed.), § 1327, p. 1083.

The defendant Sherlock asserted, however, that he told Duffy he could use the car, and that he did not authorize Hull to drive it. It is pointed out that after the return of Hull and Duffy to the Vets Club, both continued to drink until they were drunk. When they left the Vets Club, Hull got into the Sherlock car and drove it away without protest by Duffy. Sherlock contends that Hull acted in excess of any permission given to Duffy or Hull and that liability cannot therefore attach to Sherlock. We point out that if Sherlock was negligent in permitting Duffy to use his car because of the latter's intoxication, or the likelihood that he would become intoxicated, Sherlock is liable for every

act of Duffy which contributed to the accident, including the act of Duffy in permitting Hull to drive while he was drunk. Richton Tie & Timber Co. v. Smith, 210 Miss. 148, 48 So. 2d 618; Thixton v. Palmer, 210 Ky. 838, 276 S. W. 971, 44 A. L. R. 1379; Harrison v. Carroll, 139 F. 2d 427.

If Sherlock was negligent in permitting Duffy to use his car under the circumstances shown, as the jury might well find, the negligent act which caused the collision did not begin when the automobiles which collided approached each other on the highway. It had its beginning when Sherlock entrusted his car to a person who was intoxicated, or addicted to intoxication, or otherwise incapable of properly operating an automobile under the circumstances shown. An owner of an automobile is liable for placing an automobile in irresponsible hands and in this way putting a dangerous instrumentality upon a public highway, if damage results therefrom.

Where the owner of an automobile engages with another in the drinking of alcoholic beverages, during the course of which he entrusts the control and operation of his automobile to such other person, it is ordinarily for the jury to determine whether or not such owner exercised due care in so doing. We think the evidence sufficient in the present case to go to the jury on the question of Sherlock's negligence in entrusting the control and operation of his automobile to Hull and Duffy, or either of them, under the circumstances shown. Mitchell v. Churches, 119 Wash. 547, 206 P. 6, 36 A. L. R. 1132.

The appellant contends that the verdict and judgment in favor of the defendant Thomas is erroneous because of errors in the instructions given by the court. The appellant complains of the giving of instructions Nos. 6 and 13.

In instruction No. 6 the court stated in part:

"As to the defendant Thomas, the issues are stated in two propositions: 1. That at the time of or immedi-

ately before the collision, the defendant Thomas was engaged in a race or test of speed with the defendant Hull. 2. That during the course of such race, injury was caused to plaintiff and his property, by the negligence of the defendant Hull."

In instruction No. 13, the court told the jury:

"Evidence has been received relating to conversations between the defendants Hull and Thomas and other persons concerning the comparison of the speed of Ford and Mercury automobiles. You will, if you find such evidence true, give it the weight to which you find it entitled, together with the other facts and circumstances shown by the evidence, in determining whether or not the defendants Hull and Thomas were racing at the time of the collision. An agreement to hold a race does not make one of the participants liable for the negligence of another, unless such race is actually held and the negligence occurred during the course thereof."

It is the contention of the appellant that the court erred in telling the jury that in order to make Thomas liable he had to be racing at the time of the collision. Appellant cites Carney v. DeWees, 136 Conn. 256, 70 A. 2d 142; Saisa v. Lilja, 76 F. 2d 380; Reader v. Ottis, 147 Minn. 335, 180 N. W. 117, 16 A. L. R. 463. While we are in accord with the holdings of these cases to the effect that one may be guilty of negligence contributing to an injury without actual participation at the time the injury was inflicted, we do not think the trial court erred in giving instructions Nos. 6 and 13, in view of the allegations of plaintiff's petition and the evidence adduced in support thereof. The petition alleged in substance that in the furtherance of a common plan to race his automobile with the one driven by Hull, Thomas began pursuing and racing with the said Hull to the point of collision, and while they were so engaged in said plan, the collision occurred. The instructions are limited to the allegations of the petition and the evidence offered in support thereof, and are correct when ap-

plied thereto. A party may not complain of the failure of the trial court to instruct on issues which are outside the scope of the pleadings and evidence. The instructions were in accord with appellant's theory of the case and correctly stated the law in that regard.

The appellant complains of the refusal of the trial court to permit the official court reporter to read the evidence of Hull to the jury after the case had been submitted. The record shows that after the submission of the case the jury requested that the testimony of Mr. and Mrs. Deck and Mr. Hull, tending to prove that a race was in progress just before the accident, be read to the jury. The court permitted the evidence of Mr. and Mrs. Deck to be read to the jury but declined the request as to Hull. We point out that the evidence as to Hull was admitted as an admission against interest against him and its offer was so limited by the court. The evidence was not admissible against Thomas, as the court correctly ruled. Under such a situation the trial court was entirely correct in not permitting such evidence to be read to the jury on an issue as to which it was incompetent and immaterial, and thereby lead the jury to believe that it could be considered in the determination of such issue. The assignment of error on this point has no merit.

The question of negligence on the part of Thomas was correctly submitted to the jury on appellant's theory of the case. The jury returned a verdict for the defendant Thomas. We find no error with respect thereto and the judgment for Thomas is affirmed.

We find that the trial court erred in sustaining defendant Sherlock's motion for a directed verdict. The judgment in favor of Sherlock is therefore reversed and the cause of action as to him is remanded for a new trial.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.