MARY KATHLEEN HENDERSON, Plaintiff–Appellant, v. **PROFESSIONAL COATINGS CORP.** (John Doe 1), and **JOHN PHELPS** (John Doe 2), Defendants–Appellees, and **JERALD W. HUGHES, JAMES McLEAN** (John Doe 3), **JOHN DOES 4–10, JANE DOES 1–10, DOE CORPORATIONS 1–10**, and **DOE PARTNERSHIPS 1–10**, Defendants

NO. 14541

(CIV. NO. 88–0173)

OCTOBER 24, 1991

PADGETT, ACTING C.J., HAYASHI, WAKATSUKI, AND MOON, JJ., AND INTERMEDIATE COURT OF APPEALS ASSOCIATE JUDGE HEEN, IN PLACE OF LUM, C.J., RECUSED

388

## OPINION OF THE COURT BY MOON, J.

Plaintiff Mary Kathleen Henderson (Henderson) appeals from an order of the Fifth Circuit Court granting summary judgment to defendants–appellees John Phelps (Phelps) and Professional Coatings Corp. (Professional Coatings). Henderson alleges that Phelps and Professional Coatings are liable for the acts of certain employees that led to an automobile accident in which Henderson was injured. Finding no liability under the theories of *respondeat superior*, negligent entrustment, or general negligence, we affirm.

### I.

In this appeal, we must view the evidence in the light most favorable to Henderson to decide if there are any genuine issues of material fact and whether Professional Coatings and Phelps are entitled to summary judgment as a matter of law. *Cuba v. Fernandez*, 71 Haw. 627, 631, 801 P.2d 1208, 1211 (1990). In light of this standard of review, we have resolved any disputed facts in favor of Henderson. Based on this premise, the relevant facts are as follows:

On Sunday, May 3, 1987, at approximately 10:25 p.m., while traveling on Kuhio Highway near Princeville, Kauai, Henderson was injured when her automobile was struck head–on by an automobile driven by defendant Jerald W. Hughes (Hughes). The automobile Hughes was driving was one of two that had been

rented by his employer, Professional Coatings, for use by its employees. Hughes and other employees of Professional Coatings, including defendant James McLean (McLean), had flown from Oahu to Kauai with Phelps, a part–owner of Professional Coatings. The employees' travel expenses were paid for by Phelps. They had flown to Kauai for a painting job that was to begin on Monday, May 4, which was scheduled to last approximately one month.

Before the flight to Kauai, Phelps and the employees drank beer. It was common for the crew to drink beer together. Phelps was aware that both Hughes and McLean were heavy drinkers. Phelps also believed that McLean drank 990 out of 1,000 days and considered McLean to be an alcoholic.

The crew arrived on Kauai on the day before the accident, and drove the rental cars to two condominium units in Poipu that Professional Coatings had rented for their use during the painting job. Several of the employees then used one of the rental cars, with Phelps's permission, to drive to the north shore of Kauai. The employees took turns driving. While Hughes was driving the car, it had a flat tire and the car became muddy or sandy. Phelps later reprimanded Hughes for this.

On the day of the accident, Phelps gave permission to McLean to use one of the rental cars so McLean could visit a friend in Princeville. Phelps did not accompany the group on their outing. However, Phelps knew that Hughes and two other employees would be going with McLean and that they would be drinking and partying.

McLean drove to Hanalei Beach Park where Hughes met a woman, who accompanied the rest of the group to a barbecue party at the home of McLean's friend in Princeville. Both McLean and Hughes, as well as the other workers, were drinking a great deal at the party. McLean became so inebriated that he could no longer drive, therefore, he decided to sleep at his friend's home. At some

point early in the evening, McLean, while intoxicated, entrusted Hughes, who was also intoxicated, with the car. Hughes and his female companion went to her home and spent several hours there. When Hughes left to return to the party, the collision with Henderson occurred.

Henderson's amended complaint included the following allegations against Professional Coatings and Phelps:[1] Count Five – Professional Coatings is liable for the alleged negligent driving of its employee, Hughes, under the theory of *respondeat superior*; Count Six – Professional Coatings is liable for the alleged negligent entrustment of the vehicle by its employee, McLean, to Hughes, under the theory of *respondeat superior*; Count Seven – Professional Coatings was the name under which Phelps conducted business and Phelps is thus liable for the negligent acts of his employees in the same manner as Professional Coatings is (*i.e.*, under the theory of *respondeat superior*); and Count Eight – Phelps is liable because he negligently entrusted the vehicle to McLean, which was the proximate cause of the accident.

## II.

### A. Respondeat Superior

Counts Five, Six, and Seven of the amended complaint are based upon the legal doctrine of *respondeat superior*. As explained in *Kang v. Charles Pankow Associates*, 5 Haw. App. 1, 7–8, 675 P.2d 803, 808, *cert. granted*, 67 Haw. 685, 744 P.2d 781, *aff'd mem.* (Haw. Apr. 12, 1984) (No. 8917): "Under this doctrine, 'the employer is held accountable and liable for the negligent

---

[1] The first two causes of action, against Hughes, allege negligence and gross negligence, respectively. The third and fourth causes of action respectively allege that McLean negligently entrusted the vehicle in question to Hughes, and that McLean was grossly negligent in doing so.

acts of its employees.' However, recovery under the doctrine requires that the employee's 'act complained of must have been within the scope of the employment.' " (Citations omitted.) The Restatement (Second) of Agency § 228 (1958), delineates the scope of employment in pertinent part as follows:

> (1) Conduct of a servant is within the scope of employment if, but only .if:
>> (a) it is of the kind he is employed to perform;
>> (b) it occurs substantially within the authorized time and space limits; [and]
>> (c) it is actuated, at least in part, by a purpose to serve the master, . . . .
>
> *       *       *       *       *
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

*Kang*, 5 Haw. App. at 8, 675 P.2d at 808.

In *Kang*, employer Charles Pankow Associates' employee, Glen Pluid, was involved in an automobile accident on Kauai. Pluid, a resident of Oahu, was on Kauai to work on a construction project for Pankow in Princeville. Pluid's transportation to Kauai was paid by Pankow and Pluid was given a per diem allowance to cover housing and food expenses. Pluid had shipped his own vehicle to Kauai to use during the construction job, which was for an indefinite period.

One evening, while Pluid was driving his car, he collided with plaintiffs' vehicle. Plaintiffs claimed that Pankow was vicariously liable under the doctrine of *respondeat superior*. The circuit court granted summary judgment to Pankow, which the Intermediate

Court of Appeals affirmed. The Court of Appeals noted the following:

> Pluid was involved in the accident several hours after he had finished work for the day and left the job site. He was neither going to nor coming from the Princeville project work area. In fact, in the intervening period, Pluid had gone to the bank, had a few beers at a restaurant, and returned home. The accident occurred nowhere near the Princeville project. At the time of the accident, Pluid was driving to the Bullshed restaurant to meet friends for a purely social occasion. The Mazda was neither owned nor insured by Pankow. Pankow neither required Pluid to have a car for work purposes nor imposed any restrictions regarding its use.

*Kang*, 5 Haw. App. at 8–9, 675 P.2d at 808. Based on these facts, the Court of Appeals found that the "only reasonable conclusion" was that Pluid "was not acting within the scope of his employment at the time of the accident." *Id.* at 9, 675 P.2d at 808.

Although generally "[w]hether the employee is acting within the scope of his employment is 'a question of fact to be determined in the light of the evidence of each particular case[,]' . . . where the facts are susceptible of but one reasonable conclusion, the question may become a question of law for the court." *Kang*, 5 Haw. App. at 8, 675 P.2d at 808 (quoting *Nordmark v. Hagadone*, 1 Haw. App. 487, 489, 620 P.2d 763, 765 (1980)) (other citation omitted). We find that the facts of the case before us lead only to the conclusion that neither Hughes nor McLean was acting within the scope of their respective employments when committing the allegedly negligent acts.

Henderson argues that *Kang* is inapplicable because of the Court of Appeals' finding that "[t]he indefinite length of Pluid's stay on Kauai and Pankow's lack of even 'potential' control over him during the off work hours are crucial distinguishing factors."

5 Haw. App. at 10, 675 P.2d at 809. Admittedly, the facts of the present case and of *Kang* differ. In this case, Hughes was driving a car rented by his employer. He was on Kauai for a limited time of one month and lived with his co–workers in a condominium supplied by his employer. Based on these facts, Henderson argues that Professional Coatings had potential control over its employees during off work hours. We do not agree. Instead, we find the following comments from *Kang* to be instructive: "the liability imposed upon the employer is not open–ended and unlimited. The employer's liability is limited by the test of whether the employer's risks are incident to his enterprise, . . . or the 'enterprise theory' which finds liability if 'the enterprise of the employer would have benefited by the context of the act of the employee but for the unfortunate injury.' " *Kang*, 5 Haw. App. at 10–11, 675 P.2d at 809 (citations omitted).

We conclude that here, as in *Kang*, the only reasonable result is that the employer is not vicariously liable for the acts of its employees. Neither the act of McLean in entrusting the car to Hughes so that he could spend time with a female acquaintance, nor the act of Hughes in driving the car to return to the party after spending time with the woman in question, was within the course and scope of their respective employments. The acts involved were not of the kind that Hughes or McLean were employed to perform, did not occur within authorized work hours, and were not actuated, even in part, by a purpose to serve their employer, Professional Coatings. There was no intention to act in the employer's interest, nor was there any direct benefit to the employer. *See Kang*, 5 Haw. App. at 8, 675 P.2d at 808; *Costa v. Able Distribs., Inc.*, 3 Haw. App. 486, 490, 653 P.2d 101, 105 (1982). We share the reservations expressed by the Court of Appeals concerning the broad application of the *respondeat superior* doctrine:

> We do not believe that the *respondeat superior* doc-
> trine is so pliant that where an employee is hired in one

> locality and relocated to another by his employer for an indefinite period of time, any act of the employee before, during, or after his working hours is one within the scope of his employment as long as he works for the employer in the latter locality.

*Kang*, 5 Haw. App. at 9, 675 P.2d at 809. In the present case, there is no evidence to support Henderson's assertion that Professional Coatings had the potential, or even the desire, to control the behavior of its employees outside of work hours. The fact that the period of employment on Kauai was limited and that the employer rented the car involved in the accident does not alter the analysis under *Kang*. We hold that summary judgment was properly granted on Counts Five and Six, which were based on *respondeat superior*.

Under Count Seven, Phelps's liability is contingent upon a finding of liability on the part of Professional Coatings. Since we have found that Professional Coatings is not liable, we hold that summary judgment was also properly granted as to this count.

### B. Negligent Entrustment

Unlike the counts alleging vicarious liability, Count Eight of the amended complaint alleges:

COUNT EIGHT —<br>CLAIM AGAINST JOHN PHELPS —<br>NEGLIGENT ENTRUSTMENT

. . . .

33. The vehicle involved driven by JERALD HUGHES and involved in the collision with Plaintiff had been entrusted by Defendant PHELPS to Defendant McLEAN.

34. Defendant PHELPS was negligent in entrusting the vehicle to McLEAN.

35. Defendant PHELPS' negligence appproximately [sic] caused the damages to Plaintiff as aforesaid.

Under the common law action of negligent entrustment, "the plaintiff claims that the defendant was negligent in entrusting potentially dangerous automobiles to an incompetent driver. In order to recover under this theory there must be a showing that the facts giving rise to the alleged incompetency were known or should have been known to the entrustor at the time of the entrustment." *Abraham v. S.E. Onorato Garages*, 50 Haw. 628, 633, 446 P.2d 821, 824 (1968) (citations omitted). Under the test recited in *Onorato*, the plaintiff must show that the entrustee's alleged incompetent or irresponsible behavior was known or was foreseeable to the entrustor. "The test [of foreseeability] is whether 'there is some probability of harm sufficiently serious that [a reasonable and prudent person] would take precautions to avoid it.' " *Knodle v. Waikiki Gateway Hotel, Inc.*, 69 Haw. 376, 388, 742 P.2d 377, 385 (1987) (citations omitted). It "does not mean foreseeability of any harm whatsoever, and it is not sufficient that injury is merely possible." 65 C.J.S. *Negligence* § 5(5) (1966) (footnotes omitted).

In *Onorato*, plaintiff sustained injuries in an accident while a passenger in a vehicle operated by Everett McCoy on December 18, 1964. The owner of the vehicle had left it with McCoy's employer, Onorato, who was engaged in the business of storing vehicles at his garage in Honolulu. The accident occurred in the early morning hours prior to commencement of garage business. At the time of the accident, without Onorato's permission, McCoy was operating the vehicle with several passengers, including the plaintiff. Plaintiff sued Onorato under several theories, including negligent promotion (of McCoy to the position of manager) and negligent entrustment.

McCoy was first employed by Onorato on July 13, 1961 as a parking attendant at Onorato's San Francisco garage. On March 4, 1963, McCoy was promoted to manager. He was then transferred

to Honolulu on October 12, 1964 to manage the Honolulu garage. Unknown to Onorato at the time of initial hire in 1961 were McCoy's criminal convictions for joyriding as a juvenile, seventeen years earlier; assault and battery, four years earlier; and a hit and run of a parked vehicle, nine months earlier. During his employment with Onorato, McCoy's license had been suspended at various times. Shortly before his transfer to Honolulu, he was convicted in California for driving while his license was suspended. There was some evidence that Onorato knew McCoy was without a valid license when he transferred to Honolulu; however, there was no evidence to show that Onorato knew the license had been suspended as opposed to merely lapsing. Nor was there evidence to indicate that Onorato knew that McCoy obtained a Hawaii license without advising the authorities that his California license was still suspended.

While McCoy was only authorized to drive stored vehicles for repairs or polishing when customers requested such services, the evidence showed that plaintiff had observed McCoy operate the vehicle in question on at least six separate occasions prior to the accident, one of which involved a drag race. Further, McCoy admitted driving the vehicle without permission at least two times prior to the accident. However, there was no evidence to show that Onorato knew of these unauthorized usages of the vehicle.

In affirming the grant of summary judgment in favor of the employer on the theories of negligent promotion and negligent entrustment, this court determined that in order to recover under either theory, there must be a showing that Onorato knew or should have known 1) that McCoy was incompetent to perform the job to which he was promoted, and 2) that McCoy was incompetent to drive an automobile. Relying on identical reasons in affirming the summary judgment on both theories, we held that there was no evidence to show that Onorato had any knowledge of facts which purportedly demonstrated McCoy's incompetency to perform the

job as manager or to drive. There apparently was some confusion as to whether Onorato knew of the hit and run conviction, which occurred prior to McCoy being hired. However, we explained:

> Indeed, even if the hit and run conviction were known or imputed to the employer [Onorato], we are not convinced that this single accident occurring some four years prior to the promotion to manager would be sufficient to permit a jury to decide that a driver was incompetent to such a degree that his retention in service would be at the employer's risk.

*Onorato*, 50 Haw. at 633, 446 P.2d at 825–26 (citation omitted). This court held as a matter of law that the evidence was insufficient to permit a jury to find Onorato negligent.

Negligent entrustment is a specific cause of action. This court has determined that "it is clear 'that [the] negligent entrustment [of an automobile] is irrelevant unless the person to whom [it] is entrusted acts in a negligent manner (creates an unreasonable risk) and *in fact* inflicts injury as the result of such conduct.' " *Hawaiian Ins. & Guar. Co. v. Chief Clerk of the First Circuit Court*, 68 Haw. 336, 340–41, 713 P.2d 427, 431 (1986) (quoting *Bankert v. Threshermen's Mut. Ins. Co.*, 110 Wis. 2d 469, 476, 329 N.W.2d 150, 153 (1983) (other citation omitted and emphasis added). As explained by the Wisconsin Supreme Court in *Bankert*:

> For liability to ensue, the negligence of the entruster and the entrustee must result in injury. . . . " 'In such a case of mere permissive use, the liability of the [entruster] would rest . . . upon the combined negligence of the [entruster] and the [entrustee]; negligence of the [entruster] in intrusting the machine to an incompetent [entrustee], and [negligence] of the [entrustee] in its operation.' " Hence, *it is the negligent use and operation of the vehicle by the*

*entrustee which makes the negligent entrustment rele-vant at all.*

*Bankert*, 329 N.W.2d at 153 (quoting Berry on *Automobiles* § 1040, at 410 (3d ed.) (emphasis added)).

In the present case, Henderson argues that summary judgment was improperly granted on this claim because a question of fact exists as to whether Phelps knew or should have known, based on McLean's drinking habits, that McLean was incompetent to drive the vehicle or that McLean would permit Hughes to drive. Phelps's knowledge of McLean's drinking habits is irrelevant here because there can be no cause of action for negligent entrustment against Phelps where the entrustee, McLean, did not negligently operate the entrusted vehicle and cause Henderson's injuries. *Id.*

However, under a general negligence theory, which Henderson appears to be asserting in her brief, a closer review of the facts of this case is required. Henderson takes issue with Phelps's assertion that negligent entrustment "is 'irrelevant' here because McLean was not driving the car at the time of the collision." Henderson submits that "Phelps clearly misinterprets the *general law of negligence*, however, which finds negligence where one in control of a car permits another to use it under circumstances *where he knows or should know that such use may create an unreasonable risk of harm to others*." (Emphasis added.) While we acknowledge that Henderson does not specifically argue that Count Eight, which is labeled "negligent entrustment," may be interpreted as stating a theory under the "general law of negligence," we will assume that it does for the purpose of the following discussion. *See Island Holidays, Inc. v. Fitzgerald*, 58 Haw. 552, 574 P.2d 884 (1978) (pleadings should not be construed technically when determining what the pleader is attempting to set forth but should be construed liberally so as to do substantial justice). Moreover, whether the theory asserted is labeled "negligent entrustment" or "general negligence," we accept Henderson's position that the

issue is, like in *Onorato*, one of foreseeability, that is, whether Phelps knew or should have known at the time he loaned the vehicle to McLean, that McLean would act unreasonably by loaning the vehicle to persons such as Hughes, who in turn would negligently operate the vehicle and cause injury to others.

Ordinarily, issues of negligence, including foreseeability, are not susceptible to summary adjudication. However, where the facts are undisputed or are susceptible of only one reasonable interpretation or conclusion, the trial court is under a duty to pass upon the question of negligence as a matter of law. *Pickering v. State*, 57 Haw. 405, 557 P.2d 125 (1976).

Henderson asserts that Phelps was negligent because he loaned the vehicle to McLean "knowing that McLean was an alcoholic prone to act unreasonably." However, Henderson offers no competent evidence to support this blatant assertion. Henderson's untenable position is based on Phelps's deposition testimony that he was aware that McLean was a heavy drinker, that Phelps believed McLean drank 990 out of 1,000 days, and that Phelps considered McLean to be an alcoholic. However, under Hawaii Rules of Civil Procedure (HRCP) 56(e), such "evidence" is insufficient to raise a genuine issue of material fact.

HRCP 56(e) provides (emphasis added):

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts *as would be admissible in evidence*, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, *an adverse party* may not rest upon the mere

allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.*

A party opposing a motion for summary judgment cannot discharge his or her burden by alleging conclusions, "nor is he entitled to a trial on the basis of a hope that he can produce some evidence at that time." 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).

Characterizing a person as a "heavy drinker" and an "alcoholic" are merely conclusions or opinions of McLean's drinking habits that are without any foundational evidence. Such conclusionary statements or opinions would be inadmissible in evidence because their "probative value is substantially outweighed by the danger of unfair prejudice . . . or misleading the jury . . . ." HAWAII RULES OF EVIDENCE (HRE) 403. Nor would such lay opinions be "helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue" under HRE 701.

There is also a total lack of foundational evidence to support Phelps's "statistics" that McLean drank 990 out of 1,000 days. More importantly, even if the foundation could be laid to show that Phelps's statistics are accurate, there is simply no evidence as to what Phelps knew about McLean when he drank on those 990 days. There is a complete absence of any evidence that Phelps ever observed McLean in an intoxicated condition or that Phelps knew that McLean would become intoxicated to the point of acting negligently or recklessly whenever he drank.

While the label of "heavy drinker" or "alcoholic" may conjure images of a person who is untrustworthy, has a devil–may–care attitude, or exhibits reckless, unruly, intoxicated or drunken behavior, it is common knowledge that many who may be considered heavy drinkers or may suffer from alcoholism are law abiding

citizens who hold responsible positions in society. Many own their own vehicles, which they operate in a safe manner. Many are financially self–supporting and are otherwise respected members of our community. It is also common knowledge that the judgment and behavior of heavy drinkers or alcoholics may vary depending on the person's level of tolerance to alcohol, which may be dependent on such factors as body size, weight, and metabolism. The level of consumption may also vary when they drink at home, at work, or at social events. What may be heavy or excessive drinking to one may be de minimis to another. Thus, one cannot presume that "heavy drinker" or "alcoholic" equates to "unreasonable or irresponsible behavior."

Here, our review is restricted to the evidence as presented in the record. There is no evidence that McLean was involved in any accidents, automobile or otherwise, during the two to three years that he was employed with Professional Coatings or Phelps prior to the accident. There is also no evidence that McLean was ever involved in any drunk driving incidents, or exhibited drunken or negligent behavior of any kind at any time, on or off the job, during the same time period. Under the state of the evidence as presented, we cannot and will not indulge in speculating as to what the evidence might have revealed had there been inquiry regarding Phelps's knowledge of McLean's behavior when he drank, his level of tolerance to alcohol, his driving or accident history, or any other facts which may have supported Henderson's assertion that Phelps knew or should have known that McLean was "prone to act unreasonably" or irresponsibly.

In its analysis, the minority relies on Phelps's conclusions and opinions as well as the fact that Phelps knew that all the workers drank together, that Hughes was a heavy drinker, that some of the workers, including Hughes and McLean were going to a party where there would be drinking, and that Hughes had in fact driven the car the day before the accident. The minority then concludes

that at the time of entrustment, Phelps knew that McLean "was likely to become intoxicated." Clearly, the minority's use of the term "intoxicated," without any evidence of the degree of intoxication, is as vague and ambiguous as "heavy drinker" or "alcoholic," and is subject to the identical criticism expressed in our foregoing discussion. The minority's determination that there exists a genuine issue of material fact in this case is premised on the acceptance of Phelps's conclusions and opinions without any foundational evidence, which is in total disregard of the requirements of HRCP 56(e). The minority seemingly misunderstands the issue. The issue is not whether McLean was likely to become intoxicated. The issue is whether he was likely to become intoxicated to the point of acting unreasonably or irresponsibly.

We find that the facts as presented in this case support only one reasonable conclusion, that is, it was not reasonably foreseeable to Phelps that allowing McLean to use the rental car would pose an unreasonable risk of harm. *Pickering v. State*, 57 Haw. 405, 557 P.2d 125 (1976). Thus, we hold that the trial court was correct in finding that the state of the evidence in this case was insufficient as a matter of law to raise any genuine issues of material fact.

## III.

Based on the foregoing, we find no vicarious or direct liability against defendants–appellees John Phelps and Professional Coatings Corp., and affirm summary judgment in their favor.

*Alan Van Etten* (*Diane D. Hastert* of Damon, Key, Bocken, Leong & Kupchak, and *Kenneth J. Kopicki* of Seattle, Washington, with him on the brief) for plaintiff–appellant.

*John S. Nishimoto* (*Patricia T. Fujii* with him on the brief of Libkuman, Ventura, Ayabe, Chong & Nishimoto) for defendants–appellees John Phelps and Professional Coatings Corp.

CONCURRING AND DISSENTING OPINION BY
PADGETT, ACTING C.J., JOINED BY HAYASHI, J.

I concur in part II. A. of the opinion but dissent with respect to part II. B. Part I. is a recital of the evidence which is accurate, except in one respect noted below.

The majority in part I. summarizes the evidence in the record as follows:

> Before the flight to Kauai, Phelps and the employees drank beer. It was common for the crew to drink beer together. Phelps was aware that both Hughes and McLean were heavy drinkers. Phelps also believed that McLean drank 990 out of 1,000 days and considered McLean to be an alcoholic.
>
> The crew arrived on Kauai on the day before the accident, and drove the rental cars to two condominium units in Poipu that Professional Coatings had rented for their use during the painting job. Several of the employees then used one of the rental cars, with Phelps's permission, to drive to the north shore of Kauai. The employees took turns driving. While Hughes was driving the car, it had a flat tire and the car became muddy or sandy. Phelps later reprimanded Hughes for this.
>
> On the day of the accident, Phelps gave permission to McLean to use one of the rental cars so McLean could visit a friend in Princeville. Phelps did not accompany the group on their outing. However, Phelps knew that Hughes and two other employees would be going with McLean and that they would be drinking and partying.

If the last sentence of the above quotation is meant to imply that there is *no evidence* that *Phelps* knew or should have known

that *McLean* would be drinking and partying, then it is simply not correct. There was a dispute in the evidence as to whether, when McLean borrowed the automobile from Phelps, it was merely to go buy groceries or to go to a party. But the depositions of Hughes and McLean make it clear that their evidentiary position was that the automobile was borrowed for the purpose, known to Phelps, of going to the week–end party.

There is evidence in the record which, although contradicted, would, if believed by a jury, establish that when Phelps entrusted the automobile to McLean on the day of the accident, Phelps knew (1) that all of the workers drank together; (2) that all of the workers were authorized to drive the automobile during their stay on Kauai; (3) that the group had gone off to the north shore the previous day and taken turns driving; (4) that Hughes had in fact driven the automobile that day; (5) that McLean was a heavy drinker who drank 990 out of a 1,000 days; (6) that Hughes was also a drinker; (7) that the group including Hughes and McLean were going off in the automobile to a week–end party; and (8) that the automobile would have to be driven back from the party in time for the commencement of work on Monday.

The majority holds that *Phelps's* "opinions," held at the time he loaned the automobile to McLean, that McLean was an alcoholic who drank 990 days out of a 1,000, is inadmissible evidence in a suit against *Phelps* for negligently entrusting the automobile to McLean, and that therefore those statements made by Phelps in his deposition cannot be used against him on a summary judgment.

This ruling on evidence by the majority is simply wrong. To begin with, HRE 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2)

helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

As is noted in the Commentary to that rule, instead of the old rule of strict necessity:

The present rule adopts in its place the more liberal "convenience" test, McCormack, § 11, allowing such testimony when it is "helpful" to the trier of fact in determining or clarifying facts in issue.

As is stated in Annotation, *Admissibility as against interest of statement or report made out of court regarding accident as affected by the fact that it relates to or includes matters of opinion or conclusion*, 118 A.L.R. 1230, 1231 (1939):

[I]n a few cases it has been contended that under the rule as to exclusion of opinion evidence, statements or reports containing an opinion, conclusion, or inference against interest were not admissible. In nearly all cases where such a contention has been raised, it has been held in effect that such a statement or report, being inconsistent with the subsequent assertion of a contrary claim, was admissible in evidence, the court in some cases stating that it was for the jury to give the evidence such weight as it saw fit.

And in 29 Am. Jur. 2d *Evidence* § 604, at 659 (1967), it is stated:

Moreover, there is considerable authority for the rule that an admission or declaration against interest [does] not render[ it] inadmissible by the fact that the statement is in the form of an opinion or conclusion.

(Footnote omitted.) Contrary to the majority's position, under HRE 701 and under the vast weight of authority, Phelps's opinions as to McLean's alcoholism and drinking habits, which were relevant to the question of whether or not Phelps acted as a reasonable

man in turning the automobile over to McLean, in the circumstances of the case, were admissible against him since Phelps's state of mind when he entrusted the automobile to McLean was in issue and since his statements could have helped a trier of fact in clarifying that issue.

Phelps and McLean had known each other for a considerable period of time, had worked together, and had drunk together. Phelps had had ample opportunity to observe McLean, and his "opinions" were clearly admissible.

The majority's opinion lays down, as the law of Hawaii, that turning over an automobile to a known heavy drinker, who the lender believed drank 990 days out of 1,000, to go to a week–end party (from which they would have to return since their work started the next day) with a group of fellow workers, all of whom were known to drink together, and any of whom might drive the automobile, is not evidence of negligence on the part of the person who turned over the automobile.

The majority holds that the automobile lender in such a situation is entitled to summary judgment unless the injured party produces evidence the lender knew that the individual to whom the automobile was lent had not only driven while intoxicated, but that that individual had driven negligently while intoxicated. I cannot agree.

The common sense view would appear to be stated in *V.L. Nicholson Construction Co. v. Lane*, 177 Tenn. 440, 442–43, 150 S.W.2d 1069, 1070 (1941):

> It is insisted for defendant that Johnson had not previously been guilty of drinking at times when he was put in charge of the truck, that his drinking was done at night, and that defendant Construction Company had no reason to believe that he would get drunk on the evening that he

was directed to take this truck from Merrill's to the garage.

The officers of the Construction Company, however, were fully advised of Johnson's propensities, that he did get drunk, that he was addicted to the use of liquor, and they were not justified in assuming that he would remain sober merely because the truck was put in his charge.

The great weight of authority is that an owner who entrusts his automobile to an individual addicted to habits of intoxication is liable for damage caused by such individual becoming intoxicated and operating the automobile negligently while in that condition. This is true although the particular individual happened to be sober when the automobile was turned over to him.

In Crowell v. Duncan, 145 Va. 489, 134 S.E. 576, 582, 50 A.L.R. 1425, the court expressed itself thus:

"Incompetence, recklessness, and accident are so universally the sequel of drinking that an owner of an automobile is put on notice of what is likely to occur if he does not take active steps to prevent any one addicted to drinking from driving it. If he fails in the performance of this duty, he should suffer the consequences of his neglect."

In *Murray v. Pasotex Pipe Line Co.*, 161 F.2d 5, 7 (5th Cir. 1947), the court stated:

While the record discloses no evidence that the appellee knew that Chenoweth had previously driven while intoxicated, we think that appellee's liability could be predicated upon appellee's reasonable anticipation of Chenoweth's driving while drunk, for the test is not necessarily what appellee actually knew as to whether or not Chenoweth drove while drunk, but the test is what the appellee, in the exercise of reasonable care, should have

known. The danger inherent in entrusting a motor vehicle to a drunken driver has been expressed by the Court of Appeals of Kentucky in these words: "It is a matter of common knowledge and observation, if not experience, that excessive use of intoxicants either benumbs the sensibilities or so stimulates the faculties that in either event it brings about a condition interfering with the normal functioning of volitional and reflex powers, thereby rendering the user incapable of responding in action with a readiness consistent with careful operation of a motor vehicle. It is likewise a matter of common knowledge that a drunken driver is ordinarily reckless, heedless, and indifferent to the consequence of his acts; and the same care and caution that causes people generally to refuse or hesitate to enter an automobile as either a guest or a passenger with such a driver should be exercised in intrusting such vehicle to him."

In *Murray, supra*, the facts were that another employee working under the driver Chenoweth had informed Norris, Chenoweth's superior, that Chenoweth had been drunk on the job and that on a particular occasion the superior had stated to Chenoweth, "Charley, I know your condition, you was too drunk."

As a result of that knowledge, on the part of the employer, the court in *Murray* stated the law as follows:

"Did [appellee] owe any duty to individuals who might be upon or traveling over highways, to exercise reasonable care to see to it that [he] to whom it intrusted its car(s) for use upon the public highways, [is a] competent sober driver(s)? We think [appellee] did owe such duty, and if, through its failure to discharge same, [Chenoweth] was permitted to [use] its car, and becoming drunk, by

reckless abandoned driving * * * [injured plaintiff's wife] * * * [appellee] would be liable. * * * "

*Id.* at 7 (Fifth Circuit Court's alterations).

The general authorities on this subject are in accord. As is stated in 7A AM. JUR. 2D *Automobiles and Highway Traffic* § 646, at 877 (1980):

> The test of the owner's liability is not whether the person to whom he entrusted the motor vehicle was intoxicated at that time but whether he was, to the knowledge of the owner, addicted to habits of intoxication; if so, the owner may become liable for his operation of the motor vehicle while intoxicated, although he was in fact sober when the motor vehicle was turned over to him.

(Footnote omitted.)

Given the above law, if McLean had been driving the automobile while intoxicated when the accident happened, in my view, there would have been sufficient evidence of negligence on the part of Phelps to create a genuine issue of material fact, because taking the facts in the record, in the light most favorable to the appellant, Phelps reasonably should have foreseen that McLean would become intoxicated and would act negligently with respect to the automobile as a result thereof.

But McLean was not driving the automobile. Instead the intoxicated McLean turned over the automobile to the intoxicated Hughes who was driving when the accident occurred.

Nevertheless, on the facts in this case, a reasonable trier of fact might well determine that the negligent act of McLean in turning over the automobile to one of his intoxicated co-workers was reasonably foreseeable by Phelps. As we have pointed out above, Phelps knew that the workers all drank together, he knew that they all drove the automobile, he knew that they all had driven the automobile the day before and had taken turns driving, he knew that

McLean drank 990 days out of a 1,000, he knew that Hughes also drank, and he knew when he turned the automobile over that the workers were going together, in the automobile driven by McLean, to a week–end party.

The majority says in its opinion:

> Phelps's knowledge of McLean's drinking habits is irrelevant here because there can be no cause of action for negligent entrustment against Phelps where the entrustee, McLean, did not negligently operate the entrusted vehicle and cause Henderson's injuries.

The majority cites no authority for this remarkable position. There is however ample authority to the contrary. A plain and simple statement of the rule appears in 60A C.J.S. *Motor Vehicles* § 431(2), at 955 (1969):

> If an owner is negligent in permitting a person to use his car because of the user's intoxication, or the likelihood that the user would become intoxicated, the owner is also liable for every act which contributes to a subsequent accident, including the act of the person intrusted in permitting another person, incompetent because of intoxication, to operate the vehicle.

(Footnotes omitted.) Thus in *Deck v. Sherlock*, 162 Neb. 86, 92–93, 75 N.W.2d 99, 103 (1956), the court stated:

> We point out that if Sherlock was negligent in permitting Duffy to use his car because of the latter's intoxication, or the likelihood that he would become intoxicated, Sherlock is liable for every act of Duffy which contributed to the accident, including the act of Duffy in permitting Hull to drive while he was drunk. [Citations omitted.]

In *Richton Tie & Timber Co. v. Smith*, 210 Miss. 148, 48 So. 2d 618 (1950), where the employer had entrusted a truck to one

Johnson, a habitual drunkard, and Johnson and one Turner got drunk and an accident happened with Turner driving, the court said:

> The antics of a drunken man are unpredictable, and it might reasonably have been anticipated that Johnson when intoxicated would engage with another equally intoxicated in the reckless operation of the truck.

*Id.* at 158, 48 So. 2d at 621. *See also Connolly v. Bressler*, 283 Or. 265, 583 P.2d 540 (1978). The facts as recited by the court were:

> Five young men went "road hunting" for grouse in a pickup truck belonging to Bressler's uncle, who had allowed Bressler to use it. All five, including plaintiff and his brother Mike, got drunk while hunting. Upon returning from hunting, Bressler turned the truck over to Wilt, one of the five, and left to take his girl riding on Wilt's motorcycle, saying he would meet them later at a designated place.
>
> Plaintiff and his brother Mike wanted to return home for a family dinner for Mike, who was on leave from the Marines. Mike had passed out in the back of the pickup. On the way to the brothers' home, Wilt stopped at a tavern, leaving the keys to the truck in the ignition. Plaintiff got out of the truck to visit some friends parked nearby. Mike regained consciousness and went to the tavern to get Wilt to take him home, but Wilt said to wait until he finished his beer. Mike then went back to the truck, got in the driver's seat, and started to drive away. Plaintiff, noticing this, and knowing that Mike was too drunk to drive, ran over, jumped in the bed of the truck, and started pounding on the cab while yelling for his brother to stop. Within a short distance the pickup left the road, turned over, and plaintiff received the injuries for which he recovered from Bressler.

*Id.* at 267, 583 P.2d at 541–42.

The Oregon court stated:

> There was sufficient evidence for the jury to find that turning over the truck to one who was drunk for his use was contrary to community standards and therefore blameworthy, and that said act was a cause in fact of the accident and of plaintiff's injuries. Even so, there remains the additional question of whether defendant's actions in turning over the truck fall within the scope of those acts whereby he can be held legally responsible for plaintiff's injuries. This type of question speaks to "proximate causation," which this court treats as part of the definition of negligence. Resolution of the question is usually determined by whether the harm was "foreseeable," *i.e.*, whether the actual harm caused was of the general kind to be anticipated from the blameworthy act. [Citation omitted.] If it was, liability results even though the particular manner of the injury could not be anticipated.

> The explanation dictates the answer. If a vehicle is turned over to one of a bunch of drunken youths for their use, the likelihood of a wreck and resultant injuries is sufficiently probable to be "foreseeable." The bizarre manner of the occurrence does not prevent the accident from falling into the general category of risk reasonably to be anticipated. Therefore, we conclude that Bressler's action in turning over the vehicle to Wilt was a "proximate cause" of plaintiff's injuries.

*Id.* at 268, 583 P.2d at 542 (footnote omitted).

The text and the cases we have cited derive from the general principles of foreseeability. Thus in 2 **HARPER & JAMES, THE LAW OF TORTS** § 18.2, at 1020 (1956), it is stated:

> [F]oreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful man would take account of it in guiding practical conduct.

(Footnote omitted.) And in 3 SPEISER, KRAUSE & GANS, THE AMERICAN LAW OF TORTS § 11:3, at 390 (1986) (emphasis in original):

> The courts, for the most part, have indulged a flexible approach in their ascertainment of foreseeability of an injury (or not, as the case may be.) The cases do stress the consequences that a reasonable and prudent person, in the same or similar circumstances, might anticipate. It is not essential that the (initial) tortfeasor be able to foresee the exact nature and extent of the injuries or the precise manner in which the injuries occur. The test is whether the harm that does occur is within the *scope of danger* created by the defendant's negligent conduct.

(Footnote omitted.)

On this motion for summary judgment, we are not dealing simply with a case of an entrustment to one whom the entrustor knew was likely to become intoxicated. We are dealing with a case of an entrustment, by the entrustor, to one whom he knew was likely to become intoxicated, whom he knew was going to a week-end party, whom he knew was going to the party with fellow workers who drank, and whom he knew was going to the party with fellow workers who also traded driving assignments. Moreover, the entrustor in fact knew that Hughes was a drinker, was going to the party, and had driven the automobile the day before.

In these circumstances for the court to say that Phelps, if he were acting reasonably and prudently, could not foresee that McLean would become intoxicated and that an intoxicated

McLean might well turn the automobile over to an intoxicated fellow worker, flies in the face both of reason and of the law. I would therefore reverse the summary judgment in favor of Phelps on Count VIII of the complaint and remand the case for trial.