OPINION
Plaintiff-appellant Oscar A. Dillard, Administrator of the Estate of Marva Dillard, appeals from a summary judgment rendered in favor of defendant-appellee White Allen Family Co., Inc., with respect to Dillard's wrongful death and survival action predicated upon a claim of negligent entrustment of an automobile. Dillard argues that the trial court erred in granting White Allen summary judgment because he submitted sufficient evidence to demonstrate that a genuine issue of material fact exists as to each of the elements of his negligent entrustment claim against White Allen.
We conclude that Dillard failed to demonstrate that a genuine issue of material fact exists regarding whether White Allen knew or should have known that Combs was an incompetent driver at the time it entrusted the automobile to him; therefore, the trial court did not err by granting summary judgment to White Allen regarding Dillard's negligent entrustment claim. Accordingly, the judgment of the trial court is Affirmed.
 I
In July, 1995, Laura and James Combs purchased a 1995 C 1500 Chevrolet pick-up truck from White Allen. At the time of the purchase, James did not have a driver's license or car insurance. White Allen asserts that it was not aware that James lacked a driver's license or car insurance until after the accident that resulted in Marva Dillard's death.
Sloane had promised the Combses that White Allen would repair some scratches they had observed on the pick-up truck, and that they would be given a loaner vehicle while the pick-up was being repaired. The Combses brought the pick-up truck in for repair on July 31, 1995. After an estimate of the damages was prepared, Laura departed. James then asked White Allen's body-shop employee Kimberly Burgess for the promised loaner vehicle. Burgess, who had not had any training or experience in loaner transactions, gave James the key to a 1995 Chevrolet Blazer, without having him sign White Allen's standard loaner form, which would have required Combs to give his driver's license number and insurance information. James drove the Blazer home because Laura had to go to work, but claims he did not drive the vehicle thereafter. Laura drove the Blazer on several occasions, and gave James's sister, Andrea, permission to use it to drive James to and from work, and to run errands.
On August 2, 1995, Andrea drove James to their parent's home in Moraine and parked the Blazer in the driveway, leaving the keys in it. Andrea's boyfriend, Joshua Campbell, began admiring the Blazer. Campbell asserts that when he asked James if he could take the Blazer for a test-drive, James told him, "to go ahead, the keys are in it." James, however, denies that he gave Campbell permission to use the Blazer. Andrea, who was on the telephone at the time, stated that she did not know if permission was given.
While "test-driving" the Blazer, Campbell crossed the center line and collided head-on with another vehicle driven by Marva Dillard, who was killed as a result of the accident. At the time of the accident, Campbell's blood alcohol level was well over the legal limit. Campbell was charged with Aggravated Vehicular Homicide and Involuntary Manslaughter. He later pled no contest to the charge of Aggravated Vehicular Homicide.
On January 24, 1997, the administrator of Marva Dillard's estate, Oscar Dillard, filed a wrongful death and survival action against Campbell, James Combs, and White Allen, alleging that White Allen negligently entrusted the Blazer to James Combs, who, in turn, negligently entrusted the vehicle to Campbell, who negligently operated the vehicle, resulting in Marva Dillard's death.
In April, 1998, White Allen moved for summary judgment with respect to Dillard's wrongful death and survival action, arguing that Dillard could not establish his claims for negligent entrustment, joint enterprise, mutual benefit bailment, or agent-service relationship, all or any of which Dillard had alleged entitled him to recovery. In January, 1999, the trial court granted White Allen summary judgment on all of Dillard's claims except for his negligent entrustment claim. With respect to Dillard's negligent entrustment claim, the trial court found that a genuine issue of fact existed "as to what knowledge, actual or imputed, if any White Allen had or could have reasonably ascertained relating to James Combs's driving history and lack of both an operator's license and insurance coverage."
On August 16, 1999, White Allen renewed its motion for summary judgment, arguing that, given our holding in Dillard v.Campbell (July 2, 1999), Montgomery App. No. 17401, unreported,[1] Dillard could not establish his negligent entrustment claim against White Allen because it had already been determined that White Allen did not give permission to Campbell to use the Blazer.
On September 17, 1999, the trial court issued an entry granting White Allen's motion for summary judgment, holding that "there is no genuine issue of material fact remaining and that reasonable minds can only conclude that the initial entrustment by White Allen was not negligent." The entry stated that it was a final appealable order, and contained the requisite Civ.R. 54(B) certification, since Dillard's claim against James Combs remained pending.
Dillard appeals from the summary judgment rendered in favor of White Allen.
 II
Dillard's sole assignment of error states:
 THE TRIAL COURT ERRED IN GRANTING WHITE ALLEN'S MOTION FOR SUMMARY JUDGMENT AS MULTIPLE SUCCESSIVE NEGLIGENT ENTRUSTMENTS ARE ACTIONABLE CLAIMS AGAINST THE OWNER AND/OR ORIGINAL ENTRUSTOR OF A MOTOR VEHICLE AND APPELLANT SUBMITTED SUFFICIENT EVIDENCE AS TO EACH ELEMENT OF SUCH A CLAIM TO GIVE RISE TO GENUINE ISSUES OF MATERIAL FACT.
Dillard essentially argues that he submitted sufficient evidence to demonstrate the existence of a genuine issue of material fact with respect to each element of his negligent entrustment claim against White Allen, and, therefore, the trial court erred by rendering summary judgment in White Allen's favor. We disagree.
Appellate review of a summary judgment determination is denovo; thus, the standard applied by appellate courts, like that for trial courts, derives from Civ.R. 56. Nilavar v. Osborn
(1998), 127 Ohio App.3d 1, 10. In order to prevail on a summary judgment motion, the moving party must show that: (1) there is no genuine issue of material fact remaining to be litigated; (2) the moving party is entitled to judgment as a matter as a matter of law; and (3) reasonable minds can come to only one conclusion and that conclusion is adverse to the non-moving party, who is entitled to have the evidence viewed most strongly in his favor.Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64; Civ.R. 56(C).
In order to prevail on a negligent entrustment claim, a plaintiff must establish "that the motor vehicle was driven with the permission and authority of the owner; that the entrustee was in fact an incompetent driver; and that the owner knew at the time of the entrustment that the entrustee was incompetent or unqualified to operate the vehicle, or had knowledge of such facts and circumstances as would imply knowledge on the part of the owner of such incompetency." Gulla v. Straus (1950), 154 Ohio St. 193, 201. Furthermore, "[l]iability can be imposed on a car owner for the negligent actions of an entrustee of the original entrustee if it can be shown that the original entrustment was negligent." Rogers v. Kazee (1983), 10 Ohio App.3d 139, 141, citing Deck v. Sherlock (1956), 162 Neb. 86, 75 N.W.2d 99.
After reviewing the evidence in a light most favorable to Dillard, we conclude that Dillard has failed to demonstrate that a genuine issue of material fact exists regarding whether White Allen knew or should have known that Combs was an incompetent driver when it entrusted the Blazer to him. Therefore, the trial court did not err by granting summary judgment to White Allen regarding Dillard's negligent entrustment claim.
Dillard argues that a triable issue of fact was created with respect to whether White Allen had actual knowledge that James Combs was an incompetent driver by the deposition testimony of Laura Combs, nee Beller. Dillard asserts that Beller testified that she may have told White Allen's salesman Richard Sloane about the fact that Combs's driver's license had been suspended and that he did not have car insurance, and that this alone was sufficient to create a triable issue of fact. We disagree.
When Beller was asked at her deposition whether she advised Sloane of her husband's lack of insurance, Beller replied, "I don't know," adding that if Sloane would have asked, she probably would have answered, but that she did not remember an actual question on the subject. When asked whether she advised Sloane of her husband's lack of a driver's license, Beller again replied, "I don't know," this time adding that she "might have said something [like], yeah, when he gets his license, he'll be driving it." However, immediately after that, Beller again said, "I don't know. I couldn't say for sure." Even when viewed in a light most favorable to Dillard, Beller's testimony does not create a triable issue of fact regarding whether White Allen knew of Combs's incompetence as a driver. A mere assertion that a thing ispossible — that an event may have occurred — is not probative, because it does not make the happening of the event more or less probable. See Evid. R. 401. Before any evidence is offered by either party, the trier of fact may assume that any event that is not inherently impossible may have occurred. That is the null hypothesis. Testimony to that effect is not probative. It merely offers the trier of fact an opportunity to speculate on the matter. A party who has the burden of proving an event does not satisfy that burden, even for summary judgment purposes, by offering testimony of a witness that "although I don't know whether the event occurred, it might have." For example, Dillard would have the burden of proof, in this action, of establishing that Campbell crossed the center line. That burden would not be satisfied by testimony by a witness that "although I don't know whether Campbell crossed the center line, he might have." The same is true with respect to other facts upon which Dillard has the burden of proof.
Dillard also argues that it can be inferred that White Allen knew of Combs's lack of a driver's license and insurance, because of the friendship that existed between the families of Beller and Sloane, and because of the fact that Beller and Combs "jointly or individually may have submitted a credit application" that requested license and insurance information, in order to purchase the pick-up truck. However, in their respective depositions both Beller and Sloane downplayed the friendship that existed between their families, and there was no indication that the two were familiar to an extent where the jury could have inferred from the nature of their acquaintanceship that Sloane would have known that Beller's husband lacked a driver's license or insurance. Furthermore, while Sloane "assumed" that Combs filled out a credit application, and acknowledged that the credit applications used by White Allen had spaces calling for information regarding a prospective buyer's driver's license and insurance information, Sloane testified that it was his practice not to obtain that type of information from a customer when trying to obtain credit for them.
Dillard also points out that it was White Allen's practice, consistent with industry standards, to ascertain whether a person had a driver's license and insurance before loaning them an automobile. Dillard argues that while there is no reported case in Ohio that imposes a duty on the owner of an automobile to inquire whether a person has a driver's license or car insurance, before entrusting that person with the automobile, once White Allen voluntarily chose to undertake that duty, it became obligated to perform the duty "in a reasonably prudent manner." We find this argument unpersuasive.
While it may be appropriate to require a business owner to perform a duty with reasonable care when it has voluntarily undertaken that duty with the result that where its customers have come to rely upon the owner's performance of that voluntary duty, to impose that requirement in other circumstances would discourage business owners from taking voluntary measures enhancing the safety of their customers or the general public.
Here, it cannot be argued that Marva Dillard relied on White Allen's standard practice of inquiring of persons to whom it lends automobiles whether they have a driver's license or car insurance. Furthermore, imposing a duty of reasonable care upon White Allen would discourage other car dealers from instituting similar practices.
Dillard's sole assignment of error is overruled.
 IV
Dillard's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF and YOUNG, JJ., concur.
[1] Dillard, supra, involved a separate action for subrogation brought by White Allen's insurer, Indiana Insurance Co., against Campbell, seeking property damages for the Blazer, which was demolished as a result of the accident. Campbell sought a declaration that he was a "permissive driver" of the Blazer under the terms of White Allen's insurance policy with Indiana. The trial court disagreed and rendered summary judgment in favor of Indiana on this issue. On appeal, this court upheld the trial court's finding that Campbell was not a permissive driver under the terms of the policy, since White Allen did not give Campbell either express or implied permission to use the Blazer.