81 P.3d 1218

Frank H.N. SCHENK, Plaintiff–Appellee,

v.

Bonnie Lynn SCHENK, Defendant–Appellee,

Frank H.N. Schenk, Third–Party Plaintiff–Appellee,

v.

Richard Lee, Third–Party Defendant–Appellant.

Nos. 24713, 24730.

Intermediate Court of Appeals of Hawai'i.

Dec. 22, 2003.

Certiorari Denied Jan. 15, 2004.

Paul D. Hicks, on the briefs, for third-party defendant-appellant.

Ira Leitel, Kamuela, on the briefs, for plaintiff/third party plaintiff-appellee.

BURNS, C.J., WATANABE and FOLEY, JJ.

Opinion of the Court by BURNS, C.J.

In this divorce case between Plaintiff/Third–Party Plaintiff–Appellee Frank H.N. Schenk (Frank or Plaintiff/Third–Party Plaintiff) and Defendant–Appellee Bonnie Lynn Schenk (Bonnie), Third–Party Defendant–Appellant Richard Lee (Lee or Third–Party Defendant), an attorney-at-law who represented Bonnie during most of the proceedings before and after the April 16, 1999 Divorce Decree, appeals from (1) the October 18, 2001 Decision and Order on Attorney Fees/Costs; and (2) the November 15, 2001 Judgment of the Family Court of the Third Circuit [1] in favor of Frank and against Lee in the amount of $266,519.42 ($205,143.70 "plus, pursuant to [Hawaii Revised Statutes sections] 478–3 and 636–16, prejudgment interest at the rate of ten (10) per cent a year, commencing January 28, 2000, together with an award of attorney fees and costs in the total amount of" $23,937). We reverse.

## BACKGROUND

On December 6, 1996, Frank filed a complaint for divorce against Bonnie. Initially, Bonnie was represented by attorney Charles Kleintop. On May 5, 1998, attorney Kleintop withdrew as counsel and was substituted by attorney Lee.

In a November 13, 1997 Order Following Hearing on Plaintiff's August 19, 1997 Motion for Temporary Relief, the court (a) ordered Bonnie to allow Frank to inspect artifacts he had inherited that were located within the marital residence (Puakea Bay Residence) and (b) ordered that the Puakea Bay Residence "shall be listed for sale with Dodi MacArthur[.]"

By a Stipulation Regarding Marital Assets, signed by both [Frank] and [Bonnie] on July 28 and August 4, 1998, respectively, and approved as to form by their respective counsels, [Frank] and [Bonnie] agreed to refinance the marital property in order to finance certain repairs to the marital property, to provide $150,000 to [Frank] and to [Bonnie], and to pay $100,000 to each of their respective counsels.

On September 18, 1998, Bonnie, as "Borrower," executed a "Mortgage, Security Agreement, and Financing Statement" (the Mortgage) in favor of Lee, as "Lender." The Mortgage secured payment of all amounts Bonnie owed Lee pursuant to their "Attorney–Client Fee Agreement dated April 15, 1998[.]" The security was the Puakea Bay Residence. This Mortgage was not recorded until March 23, 1999.

On October 22, 1998, Lee filed (a) a Motion to Withdraw as Counsel for Defendant or in the Alternative Motion to Enforce Stipulation Regarding Marital Assets and (b) a Notice of Lien for Attorneys Fees in the amount of $173,474.63 against all proceeds from the July 28, 1998 Puakea Bay Residence refinance loan obtained by Frank and Bonnie and secured by the Puakea Bay Residence. This Notice of Lien for Attorneys Fees was recorded on October 23, 1998.

On October 28, 1998, Lee recorded a Notice of Withdrawal of Lien for Attorneys Fees. On October 30, 1998, Lee filed a notice of withdrawal of his October 22, 1998 motion. On or about November 19, 1998, Lee was paid $130,000 "from the proceeds due [Bonnie] from the refinance of [Frank's] and [Bonnie's] first mortgage on the Puakea Bay Ranch marital residence."

The divorce trial occurred on November 19, 1998, November 30, 1998, and December 3, 1998. On February 23, 1999, the court orally stated its decision.

The April 16, 1999 Divorce Decree awarded to Frank the sole legal and physical custody of the three minor children (the Schenk Children), ordered Bonnie to pay monthly child support to Frank, established health care and educational plans for the Schenk Children, and set out a schedule for Bonnie's visitation with the Schenk Children. The

1. Unless otherwise indicated, the Honorable Victor M. Cox presided in this case.

Divorce Decree also divided the personal property of the parties, awarded to Frank numerous specified items of valuable personal property, and ordered that "[Frank] and his agents shall be permitted to enter the storage area on Oahu and the Puakea Bay Ranch residence in order to properly pack and take possession of the items described above." It ordered the sale of the Puakea Bay Residence and that the "net proceeds from the sale of the property after payment of all commissions, liens and encumbrances shall be equally shared between [Frank] and [Bonnie]."

On May 18, 1999, Frank filed a motion for an order holding Bonnie in civil contempt for failing to comply with the court's November 24, 1998 order requiring Bonnie to "pay back to the children's accounts the $20,000.00 she withdrew therefrom, together with the interest that would have been earned thereon from the bank." Frank also alleged that Bonnie failed to return a significant amount of his inherited personal property. On August 19, 1999, the court ordered Bonnie to comply with the November 24, 1998 order "from her share of the net proceeds from the sale of the Puakea Bay Ranch marital residence" and to allow Frank "to properly document, photograph, pack, and take possession of the items awarded to [Frank] and described in the Divorce Decree, in paragraph 10A and 10D."

On October 11, 1999, Lee again moved to withdraw as Bonnie's counsel, citing Bonnie's failure and refusal to comply with the court's orders. In a supporting affidavit, Lee wrote, in relevant part, as follows:

> There has been extensive work done on this case, and [Bonnie's] uncooperative behavior and actions may result in an unfavorable ruling, which would directly affect her ability to pay the full amount due and owning for legal services rendered. My law firm is small, and it would be a great financial burden to continue to represent [Bonnie] under the circumstances.

On October 26, 1999, while awaiting the family court's ruling on his motion to withdraw, Lee filed a "Notice of Secured Mortgage, Security Agreement, and Financing Statement," in which he stated that he had a

"secured mortgage note and lien, as and for attorneys fees and costs, in the minimum amount of" $165,330.89 secured by the Puakea Bay Residence, and "requested that before any economic benefits are transferred to [Bonnie] and/or before any offsets are ordered, that this lien be discharged." On November 5, 1999, Judge Colin L. Love entered an order granting Lee's motion to withdraw as counsel for Bonnie.

On January 28, 2000, the court filed its "Decision/Order on Plaintiff's Motion to Hold Defendant in Civil Contempt of Court and to Impose Sanctions Including an Award of Attorney's Fees Filed May 18, 1999" stating that "there is no plausible conclusion other than [that Bonnie] must bear the responsibility of the missing items", awarding Frank a judgment in the amount of $548,068 to be paid from Bonnie's share of the proceeds from the sale of the Puakea Bay Residence and stating that counsel for Frank "shall prepare the order/judgment."

On January 31, 2000, Frank filed a motion to establish priorities to the proceeds from the sale of Puakea Bay Residence and to require Lee to release his lien on those proceeds. According to counsel for Frank,

> Lee steadfastly refuses all suggestions, by the parties and the court, to allow the property to close while preserving his claims and defenses for ultimate determination by either the family or circuit court. Under these sad circumstances, [Frank] will not prevent the closing, and expressly directs escrow to close the transaction.

On February 8, 2000, the court entered a decision and order stating, in relevant part, as follows:

> The Court reluctantly concludes it has no jurisdiction over [Lee] to enter the requested order(s)....
>
> While this ruling may adversely affect the closing of the pending escrow, the solution appears relatively simple—i.e. a stipulation/agreement to place funds necessary to cover [Lee's] mortgage in an interest bearing trust account not to be released without written approval of [Frank], Bonnie and [Lee] or further court order; and without prejudice to any persons claims or

defenses as to ultimate division of the sequestered amount, what court should hear the issues and [Lee's] claim of right to be heard on the issue of credits/offsets resulting from . . . this Court's Decision/Order of 1/28/00. This suggested solution would appear to safeguard all person's [sic] rights, while avoiding potential liabilities for all persons for failure to close and/or preventing closing of escrow, which liabilities may be considerable.

On February 15, 2000, Lee "was paid $205,143.70 by Title Guaranty Escrow Services, Inc. from the proceeds of the sale of the Puakea Bay Ranch marital residence[.]"

On March 2, 2000, the court entered an order/judgment in relevant part as follows:

Judgement shall be and hereby is awarded in favor of [Frank] and against [Bonnie] in the amount of Five Hundred and Forty Eight Thousand and Sixty Eight Dollars ($548,068.00), together with an award of attorney's fees and costs in the amount of Twenty Three Thousand One Hundred Seventy Five Dollars and Eleven Cents ($23,175.11), for a Total Judgment of Five Hundred Seventy One Thousand Two Hundred Forty Three Dollars and Eleven Center [sic] ($571,243.11).

On March 6, 2000, Frank filed a motion for leave to file a third-party complaint against Lee to recover the $205,143.70 from Lee. On October 18, 2000, the court granted the motion. On October 24, 2000, Frank filed a "Third–Party Complaint" that alleged and requested, in relevant part, as follows:

21. Before [Lee] recorded his mortgage he knew that [Bonnie's] claim to her share of the net proceeds from the sale of the marital property might be used to compensate [Frank] should [Bonnie] fail to return to [Frank] the property ordered returned by the February 23, 1999 Minute Decision/Orders, or to compensate [Frank] if it was necessary for him to pay more than his share of the mortgage or expenses related to the marital property. [Lee] had direct knowledge of the Family Court's rulings in the Minute Decision/orders of February 23, 1999.

22. The Divorce Decree herein was filed on April 16, 1999. It restates the Family Court's Minute Decision/Orders holdings and also provides:

"The net proceeds from the sale of the marital residence shall be used, if necessary, to equalize the equal division of the net sales price in the event that any party is required to advance their separate funds to maintain the residence or to pay the mortgage or expenses thereof. The Court shall retain jurisdiction over the sale of the marital residence to insure that the orders of the Court are complied with and to resolve any disputes with respect thereto." (paragraph 9 of the Divorce Decree).

\* \* \*

"For any item to be returned/delivered to either party by the other, in accordance with this decision/order and not so returned within thirty (30) days of the decision/order, or any agreed or ordered extension, the disobeying party, at the option of the non-offending party, shall be subject to civil contempt, or his/her net proceeds from the remaining asset(s), including the proceeds from the sale of the Puakea Bay Ranch, may be charged for the evidentiary value placed by the disobeying party on any such item not so returned/delivered." (paragraph 10G of the Divorce Decree). (Emphasis added).

. . . .

33. Pursuant to the September 15, 1999 Order of the Family Court [Frank] and [Bonnie] agreed to accept an offer to purchase the marital property for 1.7 million dollars. The sale was in escrow with Title Guaranty Escrow Services, Inc. The buyer removed all contingencies to his all cash offer, and insisted on closing in a timely manner. The purchase was set to close on February 10, 2000.

34. [Frank] requested repeatedly that [Lee] release his mortgage on the marital property so that the property could be sold to the buyer free and clear of his lien and encumbrance. [Frank] request-

ed that the entire net proceeds of the sale due to [Bonnie] be held in escrow in an interest bearing account by Title Guaranty pending the ruling by the Family Court on [Frank's] pending motion to hold [Lee] in civil contempt and seeking a setoff against the proceeds payable to [Bonnie] from the sale of the marital property pursuant to the Minute Decision/Orders and Divorce Decree. [Lee] refused such request.

. . . .

40. [Lee] refused to accept the Family Court's February 8, 2000 suggestion, and refused such a stipulation/agreement as suggested by the court.

41. As a result, in order to effectuate the sale of the marital property and to avoid potential liabilities for failure to close and/or preventing closing of escrow, [Lee] was paid $205,143.70 by escrow on or about February 15, 2000 from [Frank's] share of the net proceeds in order to secure the release of his mortgage and allow the marital property to close.

42. The $205,143.70 paid to [Lee] from [Bonnie's] share of the net proceeds from the sale of the marital property should have been paid to [Frank] pursuant to the Decision/Order of January 28, 2000, the Minute Decision/Orders of the Court, filed on February 23, 1999, and the Divorce Decree, filed on April 16, 1999, and the Order of August 19, 1999.

. . . .

44. [Lee] acted willfully and intentionally to violate, frustrate, usurp, and avoid the prior decisions and orders of the Family Court. [Lee] used the economic leverage of his lien on marital property to prevent the sale of the marital property for his own pecuniary benefits, unless and until his claimed lien for attorney's fees was paid in full.

45. [Lee] wrongfully and intentionally attempted to deprive the Family Court of its powers and jurisdiction to divide and distribute the assets and debts of [Frank] and [Bonnie], and of the power to enforce the orders and decisions of the Family Court.

46. [Lee] has been wrongfully enriched by $205,143.70, and has placed his pecuniary interests above the jurisdiction, rulings, and decisions of the Family Court.

Wherefore, [Frank] prays for an order/decision/judgment requiring and compelling [Lee] to:

1. Pay to [Frank] the sum of $205,143.70 with interest from February 15, 2000, together with an award of attorney's fees, costs, and the imposition of sanctions according to the Family Court's discretion.

2. Alternately, [Frank] prays for judgment against [Lee] in the sum of $205,143.70 with interest from February 15, 2000, together with an award of attorney's fees, costs, and the imposition of sanctions according to the Family Court's discretion.

On December 28, 2000, Lee filed a motion to dismiss the Third–Party Complaint. One ground he asserted was the family court's lack of subject matter jurisdiction "to adjudicate the interests of third persons in real or personal property." The other grounds he asserted were as follows:

[Lee] would simply submit that to the extent that [Frank] asks this court to enter a judgment for money damages against [Lee] [ . . . ], he asks this court to deprive [Lee] of his Article I, Section 13 right to a trial by jury.

But while the matter of an in personam judgment is at issue, at item 46 of his Third-party Complaint, [Frank] alleges: *"[Lee] had been wrongfully enriched by $205,143.70 and has placed his pecuniary interests above the jurisdiction, rulings, and decisions of the Family Court."* But pity that [Lee] was never bound by the "jurisdiction, rulings, and decisions of the Family Court." . . .

On January 30, 2001, the family court entered an order that denied Lee's motion to dismiss and stated, in relevant part, as follows:

1. Section 571–14(a), Hawaii Revised Statutes, as amended, (HRS), provides that the family courts have exclusive

original jurisdiction in all proceedings under Chapter 580, HRS, relating to divorce proceedings, including the power to divide and distribute all assets and debts of the parties, and to divide and distribute the estate of the parties.

. . . .

4. [Lee's] attempt to lien the estate of the parties to a divorce proceeding to enforce or enable him to collect attorney's fees and costs incurred in the divorce proceeding does not terminate or take priority over the family court's jurisdiction over the estate of the parties.

5. HRS Section 571–8.5(3)(10) authorizes district family court judges to make and issue all orders necessary or appropriate in aid of their original jurisdiction, and to make and issue judgments . . . necessary to carry into full effect the powers that are given to the family court by law or for the promotion of justice in matters pending before them.

On March 5, 2001, Frank filed a motion for summary judgment. The court's August 15, 2001 "Decision/Order on Third–Party Plaintiff's Motion for Summary Judgment Filed March 5, 2001" (August 15, 2001 Summary Judgment Order) granted this motion and stated, in relevant part, as follows:

A mortgage is a transfer of an interest in real property. An owner of an interest cannot transfer more than he/she owns. . . .

. . . [Lee] was not a bonafide purchaser for value. It is true the decree was not entered until after [Lee's] mortgage was recorded, but [Lee] had notice of the Decision/Order of 2/23/99 before "perfecting" his interest. The Decision/Order, which was not modified, put [Lee] on notice of the distinct possibility that his client's interest in the property, which is all she could convey to [Lee], was subject to claims/set offs that were not yet determined. . . .

[Lee] not being a BFP . . . could not and cannot have any interest in the subject property in excess of [Bonnie's], his client.

[Bonnie's] interest in the property was ultimately found to be subject to a set off/judgment in favor of [Frank] in the original amount of $548,068. Therefore, any interest of [Lee] in the subject property is also found to be subject to the same set off.

The question then becomes one of remedy. . . .

Judgment is awarded in favor of [Frank], and against [Lee], in the amount of $205,143.70 plus, pursuant to HRS [§ ] 636–16, pre-judgment interest commencing 1/28/00 at the statutory rate.

Attorneys' fees and costs are taken under advisement. . . .

Judgment may enter 10 days after entry of a final order including fees and costs, if any.

On August 27, 2001, Lee filed a motion for reconsideration. Lee's memorandum in support of the motion argued that: (1) regarding the adequacy of the materials and declarations submitted by Frank in support of his motion, the court's decision was contrary to established law; (2) the court's reliance on cases it cited were misplaced; and (3) Lee's mortgage was used to secure unpaid fees, not to obstruct the court's efforts to distribute the marital estate.

On October 18, 2001, the court denied Lee's motion for reconsideration, concluding that its summary judgment order "was based on admissible evidence and/or matters of which the taking of judicial notice was proper."

Also on October 18, 2001, the court filed its Decision and Order on Attorney Fees/Costs awarding Frank $23,900.00 attorney fees and $37.00 costs.

On November 15, 2001, the court entered its Judgment in favor of Frank and against Lee as follows:

Based upon the August 15, 2001 Decision/Order on Third–Party Plaintiff's Motion for Summary Judgment, filed March 5, 2001, the October 18, 2001 Decision and Order on Third Party Defendant's Motion for Reconsideration, filed August 27, 2001, and the October 18, 2001 Decision and

Order on Attorney Fees/Costs, judgment shall be and hereby is awarded and entered in favor of Plaintiff and Third Party Plaintiff Frank H.N. Schenk and against Third party Defendant, Richard Lee, also known as Richard Y.S. Lee, in the amount of ... ($205,143.70) plus, pursuant to [HRS § §§ ] 478-3 and 636-16, prejudgment interest at the rate of ten (10) per cent a year, commencing January 28, 2000, together with an award of attorney fees and costs in the total amount of ... ($23,-937.00), for a Total Judgment as of October 27, 2001 of ... ($266,519.42).

On November 15, 2001, Lee filed a notice of appeal from the October 18, 2001 Decision and Order on Attorney Fees/Costs. On November 27, 2001, Lee filed a notice of appeal from the November 15, 2001 Judgment.

## POINTS OF ERROR

In his challenge to the November 15, 2001 Judgment, Lee argues that the family court committed the following five reversible errors:

1. Granting Frank leave to file a third-party complaint against Lee.

2. Denying Lee's December 28, 2000 motion to dismiss Frank's third-party complaint.

3. Granting Frank's March 5, 2001 motion for summary judgment.

4. Awarding Frank attorney fees and costs.

5. Denying Lee's August 27, 2001 motion for reconsideration.

## STANDARDS OF REVIEW

A. Motion to Dismiss for Lack of Jurisdiction

"A trial court's dismissal for lack of subject matter jurisdiction is a question of law, reviewable *de novo.*" *Norris v. Hawaiian Airlines, Inc.,* 74 Haw. 235, 239, 842 P.2d 634, 637 (1992). "[R]eview of a motion to dismiss for lack of subject matter jurisdiction is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff." *Id.* at 240, 842 P.2d at 639 (quoting *Love v. United States,* 871 F.2d 1488 (9th

Cir.1989) (brackets omitted)). "Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Id.* In making its determination, the court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *Id.* (quoting *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988)).

B. Summary Judgment

We review a circuit court's grant or denial of summary judgment *de novo* under the same standard applied by the circuit court. *Hawaii Cmty. Fed. Credit Union v. Keka,* 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000); *Roxas v. Marcos,* 89 Hawai'i 91, 116, 969 P.2d 1209, 1234 (1998). As the Hawai'i Supreme Court has often articulated: "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (citations and internal quotation marks omitted). The Hawai'i Supreme Court recognizes that "[a] fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.,* 65 Haw. 58, 61, 647 P.2d 713, 716 (1982) (citations omitted). When performing this review, "[w]e ... view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion." *Morinoue v. Roy,* 86 Hawai'i 76, 80, 947 P.2d 944, 948 (1997)(quoting *Maguire v. Hilton Hotels Corp.,* 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)).

Hawai'i Family Court Rules (HFCR) Rule 56(e) (2000) and Hawai'i Rules of Civil Procedure Rule 56(e) both provide, in relevant part, as follows:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse

party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Thus, a party opposing a motion for summary judgment cannot discharge his or her burden by alleging conclusions, nor can the hope of producing the required evidence entitle the party to trial. *Henderson v. Prof'l Coatings Corp.,* 72 Haw. 387, 401, 819 P.2d 84, 92 (1991) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* § 2727 (2d ed.1983)); *see Fujimoto v. Au,* 95 Hawai'i 116, 136–37, 19 P.3d 699, 719–20 (2001).

### C. Motion for Reconsideration

 The purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments, not to relitigate old matters or raise arguments or evidence that could and should have been brought during the earlier proceeding. *Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd.,* 100 Hawai'i 97, 110, 58 P.3d 608, 621 (2002) (citations, internal quotations and brackets omitted). We review "[a] trial court's ruling on a motion for reconsideration ... under the abuse of discretion standard." *Id.*

### DISCUSSION

### A.

HRS § 641–1 (1993) states as follows:

**Appeals as of right or interlocutory, civil matters.** (a) Appeals shall be allowed in civil matters from all final judgments, orders, or decrees of circuit and district courts and the land court, to the supreme court or to the intermediate appellate court, except as otherwise provided by law and subject to the authority of the intermediate appellate court to certify reassignment of a matter directly to the supreme court and subject to the authority of the supreme court to reassign a matter to itself from the intermediate appellate court.

(b) Upon application made within the time provided by the rules of court, an appeal in a civil matter may be allowed by a circuit court in its discretion from an order denying a motion to dismiss or from any interlocutory judgment, order, or decree whenever the circuit court may think the same advisable for the speedy termination of litigation before it. The refusal of the circuit court to allow an appeal from an interlocutory judgment, order, or decree shall not be reviewable by any other court.

(c) An appeal shall be taken in the manner and within the time provided by the rules of court.

Hawai'i Rules of Appellate Procedure Rule 4(a)(1) (2003) permits appeals in civil cases "after entry of the judgment or appealable order."

"[E]very court must determine as a threshold matter whether it has jurisdiction to decide the issues presented. Moreover, subject matter jurisdiction may not be waived and can be challenged at any time."

As a general matter, an appellate court's jurisdiction is limited to a review of final judgments, orders and decrees. A judgment is final when all claims of the parties to the case have been terminated. Absent the entry of final judgment as to all claims, an appeal may generally be taken from a nonfinal order or decree if (1) leave to take an interlocutory appeal has been granted by the circuit court pursuant to HRS § 641–1(b); (2) the order or decree has been certified as final for appeal purposes pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b) 3; (3) the order or decree being appealed is an "appealable order" under the collateral order doctrine; (4) the order or decree being appealed is an "appealable order" under the *Forgay [v. Conrad,* 47 U.S.(How.) 201, 12 L. Ed. 404 (1848)]* or immediate execution/irreparable injury doctrine; or (5) the order or decree is immediately appealable pursuant to a statutory provision.

*Wong v. Takeuchi,* 83 Hawai'i 94, 98–99, 924 P.2d 588, 592–93 (1996) (internal citations and footnotes omitted).

In this case, the August 15, 2001 Summary Judgment Order expressly was not the final judgment. It stated, in relevant part, as follows:

Judgment is awarded in favor of [Frank], and against [Lee], in the amount of $205,143.70 plus, pursuant to HRS [§ ] 636–16, pre-judgment interest commencing 1/28/00 at the statutory rate.

Attorneys' fees and costs are taken under advisement. . . .

Judgment may enter 10 days after entry of a final order including fees and costs, if any.

Therefore, it was not appealable. It and all other interlocutory orders became final and appealable when the November 15, 2001 Judgment was entered.

This conclusion is supported by the following wording of the November 15, 2001 Judgment:

Based upon the August 15, 2001 Decision/Order on Third–Party Plaintiff's Motion for Summary Judgment, filed March 5, 2001, the October 18, 2001 Decision and Order on Third Party Defendant's Motion for Reconsideration, filed August 27, 2001, and the October 18, 2001 Decision and Order on Attorney Fees/Costs, judgment shall be and hereby is awarded and entered in favor of Plaintiff and Third Party Plaintiff Frank H.N. Schenk and against Third party Defendant, Richard Lee, also known as Richard Y.S. Lee, . . . for a Total Judgment as of October 27, 2001 of . . . ($266,519.42).

### B.

HFCR Rule 14(a) (2000) states as follows:

**Third-party practice.**

(a) When Parties May Bring in Third–Party. A party to the action may cause a third-party to be brought in only in the event that property rights of such third-party may be affected or such third-party has or may have an interest in the custody or visitation of a minor child of a party to the action. The party seeking to bring in a third-party defendant shall file a motion for leave to file a third-party complaint together with an affidavit and notice in accordance with Rule 7(b)(1). The person served with the summons and third-party complaint, hereinafter called the third-party defendant, shall make any defenses to the third-party complaint as provided in Rule 12. The third-party defendant may also assert any claim against the plaintiff or defendant arising out of the transaction or occurrence that is the subject matter of the complaint.

The relevant words are that "[a] party to the action may cause a third-party to be brought in only in the event that property rights of such third-party may be affected[.]" We conclude that HFCR Rule 14(a) did not authorize Frank's third-party complaint against Lee because it did not authorize the family court to adjudicate Bonnie's alleged fee obligation to her former lawyer. In this context, the authority to "cause a third-party to be brought in only in the event that property rights of such third-party may be affected" is the authority to "cause a third-party to be brought in [to the divorce action] only in the event that property rights of such third-party may be affected [by the divorce action[,]" not the authority to "cause a third-party to be brought in [to a subsequent third-party action] only in the event that property rights of such third-party [may have been affected by a prior divorce action or] may be affected [by the subsequent third-party action]." Here, the Divorce Decree was filed on April 16, 1999, the Order/Judgment for $571,243.11 was filed on March 2, 2000, and Frank did not file his motion for leave to file third-party complaint until March 6, 2000, and did not file his Third–Party Complaint until October 24, 2000.

There were two competing claims for the half of the net proceeds of the sale of the marital real property the Divorce Decree awarded to Bonnie. First, Lee was asserting a claim for the $205,143.70 attorney fee and costs allegedly due him from Bonnie for his work in the divorce case. Second, Frank was seeking to collect the $548,068 judgment entered in his favor against Bonnie for damages caused by Bonnie's interference with Frank's ability to obtain possession of valuable personal property the Divorce Decree

awarded to him. The Divorce Decree having been filed on April 16, 1999, Lee, on February 15, 2000, having been "paid $205,143.70 by Title Guaranty Escrow Services, Inc. from the proceeds of the sale of the Puakea Bay Ranch marital residence[,]" the $571,243.11 Order/Judgment having been filed on March 2, 2000, Frank having filed, on March 6, 2000, his motion for leave to file third-party complaint, and the Third–Party Complaint having been filed on October 24, 2000, HFCR Rule 14(a) did not authorize the family court in the Third–Party Complaint case to decide the validity of Frank's assertion that Lee was not authorized to collect any of his $205,143.70 attorney fee and costs claim from the half of the net proceeds of the sale of the marital real property the Divorce Decree awarded to Bonnie until Frank collected all of his $571,243.11 judgment the family court awarded him against Bonnie.

Pursuant to the Mortgage, the attorney fee and costs Bonnie owed Lee was secured by Bonnie's interest in the net proceeds from the sale of Puakea Bay Residence. Notwithstanding that knowledge, the court entered the Divorce Decree ordering the sale of the Puakea Bay Residence and that the "net proceeds from the sale of the property after payment of all commissions, liens and encumbrances shall be equally shared between [Frank] and [Bonnie]." It appears that this part of the Divorce Decree funded Lee's security interest. Thereafter, Lee "was paid $205,143.70 by Title Guaranty Escrow Services, Inc. from the proceeds of the sale of the Puakea Bay Ranch marital residence[.]" Although the payment of the $205,143.70 to Lee had a negative effect upon Frank's ability to collect the $548,068 judgment subse-

quently entered in his favor in the divorce case, that fact does not authorize Frank to file a third-party complaint against Lee.[2] The negative effect experienced by Frank was caused by Bonnie's inability to pay the $548,068 judgment entered against her. The fact that part of Bonnie's inability to pay was caused by Lee's collection of his attorney fees and costs from her does not authorize Frank to commence, after the entry of the Divorce Decree, a third-party action against Lee in the divorce case.

## CONCLUSION

Accordingly, we reverse (1) the January 30, 2001 "Order on Third–Party Defendant Richard Lee's Motion to Dismiss Third–Party Complaint, Filed December 28, 2000" that denied Lee's motion to dismiss Frank's March 6, 2000 motion for leave to file a third-party complaint against Lee; (2) the October 18, 2000 "Order on Plaintiff's Re–Notice of Motion for Leave to File a Third–Party Complaint" that granted Frank's March 6, 2000 motion for leave to file a third-party complaint against Lee to recover the $205,143.70 from Lee; (3) the August 15, 2001 "Decision/Order on Third–Party Plaintiff's Motion for Summary Judgment Filed March 5, 2001"; (4) the October 18, 2001 Decision and Order on Attorney Fees/Costs; and (5) the November 15, 2001 Judgment.

---

**2.** If the court was concerned with the possibilities that (a) Defendant–Appellee Bonnie Lynn Schenk (Bonnie) would fail to comply with orders in the April 16, 1999 Divorce Decree, and (b) Bonnie's lawyer's collection of his fees and costs would cause Bonnie to be judgment proof, the court could have conditioned Bonnie's entitlement to a half of the "net proceeds from the sale of the [Puakea Bay Residence] property after payment of all commissions, liens and encumbrances" upon Bonnie's compliance with those orders.

If the court was concerned that Bonnie's lawyer's Mortgage would be paid from Bonnie's half

of the "net proceeds from the sale of the property after payment of all commissions, liens and encumbrances[,]" before Bonnie used her half of those proceeds to pay Plaintiff–Appellee Frank H.N. Schenk part of the $548,068 March 2, 2000 Order/Judgment, it could have conditioned Bonnie's entitlement to a half of the "net proceeds from the sale of the [Puakea Bay Residence] property after payment of all commissions, liens and encumbrances" upon Bonnie's compliance with those orders.